Filed 9/29/15  In re O.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re O.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063638 |
| Plaintiff and Respondent, | (Super.Ct.No. J257238) |
| v. | OPINION |
| G.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant G.M.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant P.B.

1

Jean-Rene Basle, County Counsel, Adam Ebright, Deputy County Counsel, for Plaintiff and Respondent.

P.B. (Father) and G.M-B. (Mother) appeal after the termination of their parental rights to O.M-B. (Minor) at a Welfare and Institutions Code[1] section 366.26 hearing, and the denial of Father's section 388 petition.

Defendants and appellants Father and Mother (Parents) contend on appeal that the juvenile court erred by summarily denying Father's section 388 petition without a hearing, because he had shown a prima facie case of changed circumstances and it was in Minor's best interest to grant the petition. They contend that if this court finds that the section 388 petition should have been granted, the order terminating parental rights must also be reversed.[2] Mother contends that the parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) applied, and plaintiff and respondent San Bernardino County Children and Family Services (Department) failed to present evidence that Minor would be adopted within a reasonable time.

We affirm the denial of Father's section 388 petition. We also find that the juvenile court properly terminated Parents' parental rights freeing Minor for adoption.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] We assume for purposes of this appeal that Mother has standing to raise this issue since she joins in Father's argument.

**FACTUAL AND PROCEDURAL HISTORY**

A.     <u>DETENTION</u>

Minor was born in June 2014, while Parents were living in Texas.  They had been involved with Texas Child Protective Services (TCPS).  The Department received a referral alleging severe and general neglect of Minor by Parents.  Parents had moved to Ontario, California in October 2014 to live with paternal grandmother.[3]  Minor tested positive for marijuana at the time of her birth.  Mother admitted using methamphetamine on June 1, 2014, and she tested positive on June 5, 2014.  Parents were unemployed.

Parents had a prior history with the Department.  On December 7, 2009, a section 300 petition was filed against Mother on behalf of Minor's half sister, S.M. (born Sept. 2001).  It was alleged that Mother was using drugs and that S.M.'s father was physically abusing S.M.  Mother was unable to complete her family reunification services (she continued her substance abuse) and her parental rights to S.M. were terminated.

On December 22, 2012, Mother visited Pomona Valley Hospital and complained of pregnancy complications.  Mother tested positive for marijuana and methamphetamines.  In December 2012, she gave birth to Minor's sister, R.M-B.  R.M-B. tested negative for drugs.  Mother received no prenatal care until her third trimester.  Mother admitted to using marijuana in an edible form every day for the prior five years to treat her anxiety.  She did not have a medical marijuana card.

---

[3]  The referral was generated from TCPS when it was discovered Parents had moved to California.

3

On January 28, 2013, Parents were tested and both were positive for amphetamine and marijuana. R.M-B. was detained along with E.M-B. (born Oct. 2006) and another half sister, A.M. (born Sept. 1998) Family reunification services were terminated on November 4, 2013.

In this case, a social worker met with Parents on October 29, 2014, in paternal grandmother's home. There were appropriate provisions for Minor in the house. There were no signs of abuse or neglect. Parents admitted to relapsing and using methamphetamine in June 2014, but blamed it on the stress of losing their other children. Parents intended to return to Texas in January 2015.

The Department was very concerned for Minor's safety given Mother's chronic drug use, which impaired her ability to provide for Minor. She did not have her other four children in her care or custody. Mother admitted she had been diagnosed with Bipolar Disorder and treated her anxiety with marijuana. Further, Father had a history of drug use, which impaired his ability to provide for Minor's basic needs. Father had convictions in 2013 and 2014 for being under the influence of a controlled substance.

On October 29, 2014, the Department requested that Parents submit to a drug test. Parents tested on October 30, 2014; the tests came back positive for amphetamines for both. Minor was placed in a confidential foster home on October 30, 2014.

On November 3, 2014, the Department filed a section 300 petition against Parents for Minor. It was alleged under section 300, subdivision (b), that Mother had a history of mental illness and substance abuse and that Father had a history of substance abuse problems, which impaired their ability to parent Minor. It was also alleged under section

4

300, subdivision (j), that both Father and Mother had failed at court ordered family reunification services for Minor's siblings.

The detention hearing was held on November 4, 2014. The juvenile court found a prima facie case and ordered that Minor be detained.

B.    JURISDICTIONAL/DISPOSITIONAL REPORT AND HEARING

A jurisdiction/disposition report was filed on November 21, 2014. The Department recommended that no reunification services be provided to Parents.

During the prior dependency proceedings involving Minor's siblings, Mother had tested positive on several occasions for amphetamines and marijuana. Mother had been diagnosed in the past with major depressive disorder. Mother had been prescribed medications in 2007 and 2008, but she had to be hospitalized due to allergic reactions. Mother appeared to be self-medicating with marijuana and other illegal drugs. In 2013, both Father and Mother had left an inpatient substance abuse program without permission and were terminated. In the prior dependency case, they had attended parenting and anger management classes. However, they had failed to obtain and maintain their sobriety.

Mother responded to her recent positive drug test that she had taken Pseudoephedrine. She also claimed to take several other medications, including Xanax.

Father admitted using two or three days prior to the October 30, 2014, test. Father reported that he had been using drugs since he was 18 years old. He reported using methamphetamine two to three times each week. Father continued to use because of his "addiction." Parents had evidence of attending NA/AA meetings.

5

Mother had been raised by her grandparents after her own mother abandoned her. She had been abused by her mother's first husband. She had no contact with her biological father. Mother had been diagnosed as being Bipolar as a teenager. She became pregnant with her first child, A.M., when she was 15 years old. She became pregnant with S.M. when she was 18 years old. She met Father in 2006 and they were married. Mother was not employed. Father had worked as a massage therapist but had not worked for three years.

Minor was examined and found to be healthy. She had no apparent developmental delays. Parents had two visits with Minor since she was detained. Parents had been attentive and affectionate with Minor. Minor responded positively. Mother had overfed Minor on one visit and had to be admonished not to overfeed her.

The Department believed that the possibility of family reunification was very low. Mother's chronic drug use impaired her ability to provide for the basic needs of her children. She was in denial about the impact of the drugs and her mental illness on her children. She was not motivated to obtain sobriety despite already losing four children. Father also suffered from chronic drug use and had failed to address it despite already losing two of his children.

Prior to the contested jurisdiction/disposition hearing, the Department requested that the juvenile court take judicial notice of the section 300 petitions and minute orders from the cases involving Minor's four siblings and half siblings. They showed that Mother lost custody of S.M. because of her drug use; she had missed 10 drug tests. Further, the section 300 petitions for R.M-B., E.M-B. and A.M. were filed in February

6

2013 against Father and Mother based on their drug use. Their parental rights were terminated on July 7, 2014; R.M-B. and E.M-B. were freed for adoption. Mother's parental rights to A.M. were also terminated.[4]

The contested jurisdiction/dispositional hearing was held on December 2, 2014. The juvenile court granted the Department's request for judicial notice of the prior dependency cases. The Department submitted further evidence that Mother had told a social worker when she tested positive on October 30, 2014, that she had done a line of speed. Father testified that since his services to R.M-B. and E.M-B. had been terminated in November 2013, he had attended AA/NA meetings five days each week. He and Mother attended a three-day substance abuse seminar through AA/NA. He admitted that he snorted methamphetamine in October 2014.

The juvenile court ordered that no reunification services would be granted to Parents based on their failure to reunify with Minor's siblings (§ 361, subd. (b)(1)) and due to the termination of their parental rights to Minor's siblings (§ 361, subd. (b)(11)). The juvenile court found the section 300 subdivision (b) and (j) allegations in the section 300 petition true against both Father and Mother. Father was named the presumed father. The matter was set for a section 366.26 hearing with a permanent plan of adoption.

C.     SECTION 366.26 REPORT

The Department filed its section 366.26 report on March 24, 2015. It recommended that the permanent plan be adoption and that the parental rights of Parents

---

[4] A.M. and S.M. had been in the care of the maternal great-grandparents since approximately April 2014 and September 2010, respectively.

be terminated.  Minor remained in foster care.  Minor was reported to be generally healthy.

Parents had been regularly attending visitation with Minor since December 2, 2014.  Minor was likely to be adopted.  Mother's cousin and her husband (the B. family), who were in the process of adopting R.M-B. and E.M-B., were also interested in adopting Minor.  It was the most appropriate adoptive home.  The home already had an approved home study.  The home study needed to be updated to place Minor in the home.  Further, an ICPC[5] had to be completed because the B. family lived in South Carolina.

Mrs. B. was a stay-at-home mom.  Mr. B. was an active duty United States Marine.  They had three biological children and were working on adopting R.M-B. and E.M-B.  They lived in a four-bedroom home.  They were willing to adopt Minor.

D.      SECTION 388 PETITION

Father filed a section 388 petition on March 26, 2015.  He filed a second petition on May 15, 2015.  The contents of the petitions and the juvenile court's determination to deny the petitions will be discussed *post*.

E.      SECTION 366.26 HEARING

At the section 366.26 hearing conducted on May 15, 2015, Parents' parental rights were terminated and Minor was freed for adoption, as will be set forth in more detail, *post*.

---

[5]  Interstate Compact on the Placement of Children.  (Fam. Code, § 7901 et seq.)

**DISCUSSION**

A.     FATHER'S SECTION 388 PETITIONS

Parents contend that the juvenile court erred by denying Father's section 388 petition without a hearing. They insist that he presented a prima facie case of changed circumstances and that it was in the best interest of Minor to return her to Parents' care.

1.     *ADDITIONAL FACTUAL BACKGROUND*

Father's first section 388, petition filed on March 26, 2015, provided documentation that he had graduated from an inpatient drug treatment program. He was enrolled in the program from December 23, 2014, to February 21, 2015. He was also enrolled in an outpatient program. He had attended one outpatient meeting. He had been tested for substances one time but no results were provided. He completed five parenting classes. He had consistently attended visitation with Minor. He also had been attending AA/NA meetings. Father requested custody of Minor. In the alternative, he sought additional visitation and reunification services. Father stated that Minor recognized him and enjoyed their visits. She would benefit from living with a parent because she would learn about family ties and ancestry.

On March 27, 2015, the juvenile court found by written order that the petition did not show a change of circumstances and did not promote the best interest of Minor. No hearing was conducted.

Father filed another section 388 petition on May 15, 2015. It again provided he had graduated from the inpatient drug program, he was still participating in the outpatient program, and consistently attended NA/AA meetings. He had completed 11 parenting

9

classes. He again sought to gain custody of Minor, or be granted reunification services. He provided the same facts supporting it was in Minor's best interest to be returned to his custody. The petition was again denied by written order for failing to show a change of circumstances or that it was in Minor's best interest. The juvenile court also stated in open court on May 15, 2015, that it was "not inclined to grant a hearing" based on no change of circumstances or showing of best interest.

2.    *ANALYSIS*

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "'[S]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required." (*Ibid.*)

A section 388 petition must state a "prima facie case in order to trigger the right to proceed by way of a full hearing." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 592.) "'There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children.'" (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079 [Fourth Dist., Div. Two].) "A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must

10

nonetheless describe specifically how the petition will advance the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.)

A section 388 petition is addressed to the juvenile court's discretion, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) "The denial of a section 388 [petition] rarely merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

A full hearing was not necessary as Father's petition only showed changing circumstance, and it was not in Minor's best interest to be returned to Father. Father's drug history was extensive. Father admitted to using drugs since he was 18 years old. He reported using methamphetamine two to three times each week. He had a positive test on January 28, 2013, in the case involving Minor's siblings. Father admitted using in June 2014. Father tested positive for amphetamines in this case in October 2014. Father had previously left an inpatient substance abuse program without permission. He had two convictions for being under the influence of a controlled substance in 2013 and 2104.

Father had only completed a three-month inpatient drug program, which he commenced in December 2014, well after Minor was taken from his custody. His rights were terminated on May 15, 2015, only a few months after he completed treatment. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [seven months of sobriety is not enough considering drug history].) Father had limited time outside the inpatient program.

11

Although he had consistently attended NA/AA meetings, there was no further information regarding whether he remained drug free. The results of his one test, to which he submitted to in the outpatient program, were not provided. Also, Father claimed to have attended NA/AA meetings since November 2013, but had tested positive for drugs in June and December 2014. Father was certainly making an effort to address his substance abuse, but his history of drug use was significant. The juvenile court did not abuse its discretion by concluding that Father had failed to present a prima facie case of changed circumstances.

Additionally, Father did not present prima facie evidence that it was in Minor's best interests to be returned to his custody, or that reunification services should be granted to him. The factors to be considered in evaluating a child's best interests under section 388 are: (1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem; (2) the strength of the child's bond with his new caretakers compared with the strength of the child's bond with the parent; and (3) the degree to which the problem leading to the dependency may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 531-532.)

Father had a serious substance abuse problem, as outlined *ante*. Moreover, substance abuse is not easily overcome. Father had been involved with the Department for several years with Minor's siblings, but still abused drugs when Minor was born. Moreover, as stated, although Father was making some progress toward his sobriety, it

12

was only for a short period of time when considering the length of his drug abuse. None of the *Kimberly F.* factors favored the granting of Father's 388 petition.

The juvenile court properly concluded that Father had failed to present a prima facie case that he had changed his circumstances, and that it was in Minor's best interest to be placed with him. As such, the juvenile court properly denied Father's section 388 petitions.

B.     TERMINATION OF PARENTAL RIGHTS

Mother contends that the juvenile court erred by terminating her parental rights despite a showing of the beneficial parent exception in section 366.26, subdivision (c)(1)(B)(i). She also appears to claim that the Department failed to establish Minor would be adopted within a reasonable time.

1.     *SECTION 366.26 HEARING*

At a hearing on April 1, 2015, Mother objected to the termination of parental rights and proceeding with adoption. Mother's counsel asked, "I had wondered if [the Department] was really wanting to proceed today . . . . I didn't know if [the Department] wanted to terminate prior to the completion of [the] ICPC." Counsel for the Department responded, "At this point, yes. That is the recommendation in light of the minor's age. And we don't see any impediments to adoptability, whether it be with the grandmother or anyone else."

Father testified at the section 366.26 hearing. He had custody of Minor the first five months of her life. He had been consistent with visitation except for one month while he was housed in the inpatient substance abuse program. He felt that Minor

13

recognized him at visits. She called him "dada." During the visits, he and Mother had fed, changed and played with her. They taught her how to crawl and walk. Father asked for custody. Also, he wanted additional time so that Mother could complete her drug program. Termination of Mother's parental rights would be harmful to Minor because she would not know her parents.

Mother testified that she had been with Minor for the first five months of Minor's life. Mother had just had a visit with Minor. She had attended all visits that were not cancelled. When Minor came to the visits, she would be very "happy." Minor called her "mama." Parents played with Minor during visitation and Minor was excited to be with them. Mother was working hard to get Minor back.

Mother's counsel argued that the parental relationship exception applied. Mother had maintained consistent visitation. The relationship outweighed the preference for adoption. Father's counsel also argued the parental relationship exception to adoption applied.

The juvenile court agreed that Parents had maintained regular visitation. However, Parents had to show that the benefit of maintaining the relationship outweighed the benefit of adoption. The juvenile court found that Minor was clearly adoptable. The prospective adoptive family was in the process of adopting Minor's biological sisters. Although Minor appeared to enjoy her visits with Parents, they did not occupy a parental role. The juvenile court ruled, "the parents have not met their burden to establish that there is a parental bond exception to adoption." The juvenile court terminated parental rights and freed Minor for adoption.

14

### 2. *PARENTAL RELATIONSHIP EXCEPTION*

At the section 366.26 hearing, the issue "'is whether there is clear and convincing evidence that the child is adoptable.'" (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732-733; see § 366.26, subd. (c).) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)

The parental benefit or "beneficial relationship" exception set forth in section 366.26, subdivision (c)(1)(B)(i), is an exception to adoption and applies where "'[t]he parents . . . have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship.'" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The parent has the burden of proving that the exception applies. (*Ibid.*) "The parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.] Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*Id.* at p. 827.) "In other words, for the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468.)

The parent must also show that his or her relationship with the child "'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing

the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.'" (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 827.)

"'The balancing of competing considerations must be performed on a case-by-case basis and take into account many variables, including the age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs. [Citation.] When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption.'" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1349-1350.)

We note that appellate courts have reached different conclusions as to the standard of review that applies to a juvenile court's ruling on exceptions to adoptability under section 366.26, subdivision (c)(1). In *In re Autumn H.*, *supra*, 27 Cal.App.4th 567, the court held that a finding that no exceptional circumstances exist to prevent the termination of parental rights is reviewed under the substantial evidence test. (*Id.* at pp. 575-576.) In contrast, in *Jasmine D.*, the court applied the abuse of discretion standard of review. (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at pp. 1351-1352.) For purposes of the present case, it makes no difference which standard applies because the juvenile court did not err under either test. (See *In re G.B.*, *supra*, 227 Cal.App.4th at p. 1166, fn. 7.)

Although there was very little information submitted by the Department about visitation, there is no dispute that Parents regularly attended visitation. However, Mother

16

failed to establish that the benefits from a stable and permanent home provided to Minor by adoption was outweighed by the benefits from a relationship with Mother. Minor was just over four months old when she was detained from Parents. She spent the majority of her life in foster care. Although it was reported that Minor was happy to see Mother, there was no evidence of a significant bond. There was nothing to support that Minor was upset when the visits ended. Mother and Minor essentially just played together. Further, Minor needed a permanent and stable home. Mother had shown that she frequently relapsed into taking drugs. Mother could not stay sober when her four other children were taken from her, and she continued to use drugs while pregnant with Minor. Substantial evidence supported the juvenile court's determination that the parent relationship exception did not apply.

Mother claims that section 366.26, subdivision (c)(1)(B)(i) only required that she show she maintained visitation and that Minor benefitted from the relationship. She insists that case law, requiring that the benefit of the relationship outweigh the stability of adoption, increases the burden of what is required by the plain meaning of the statute. Mother's argument was rejected in *In re Jasmine D.*, *supra*, 78 Cal.App.4th at pages 1347 through 1350, and *In re Amanda D.* (1997) 55 Cal.App.4th 813 at page 822. We agree with the findings in those cases and see no reason to revisit the issue.

### 3. *ADOPTION*

Mother additionally claims that her parental rights should not have been terminated because the Department did not establish that Minor would be adopted within

a "reasonable time." She focuses on the fact that the ICPC investigation of the B. family had not been completed and that the B. family had not yet met Minor.

The juvenile court may not terminate parental rights unless it finds by clear and convincing evidence "that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) The clear and convincing evidence standard is a low threshold. "The court must merely determine that it is 'likely' that the child will be adopted within a reasonable time." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292 [Fourth Dist., Div. Two].) "We review that finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion." (*Ibid.*) When adoptability is based solely on the fact that a particular family is willing to adopt, the juvenile court must determine whether there is a legal impediment to adoption. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.)

Initially, Mother's claim is based on the assumption that Minor was adoptable by only the B. family and that the ICPC was a legal impediment to adoption. However, the record supports that the juvenile court found that Minor was generally adoptable. Mother does not contest that Minor was generally adoptable. As such, the juvenile court did not need to determine if there was any legal impediment to adoption by the B. family.

Moreover, we find there is substantial evidence that Minor would be adopted by the B. family within a reasonable time. The B. family had already been approved to adopt R.M-B. and E.M-B., and a home study had been completed. The juvenile court could reasonably conclude that Minor would be placed with the B. family within a

18

reasonable time. Mother appears to contend that the ICPC approval process would take more than a reasonable time. However, the record is silent as to the length of time that the process would take.[6] The Department provided information that the ICPC was in progress. Further, there are time limits for the completion of an ICPC. (Fam. Code, § 7901.1, subd. (a).) Mother merely speculates that Minor's adoption would take more than a reasonable time. We reject Mother's contention that the adoption would not occur within a reasonable time.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

KING
J.

---

**6** We note that Mother never objected to the inadequacy of the assessment report and cannot now raise the issue on appeal. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412.)

19