12 Cal.App.4th 407 (1993)
15 Cal. Rptr.2d 613
In re CRYSTAL J. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
LINDA H., Defendant and Appellant.
Docket No. D015592.
Court of Appeals of California, Fourth District, Division One.
January 11, 1993.
*409 COUNSEL
Robert Wayne Gehring, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.
Barbara A. Smith for Minors.
*410 OPINION
FROEHLICH, J.
This is an appeal by Linda H. (mother) from a judgment terminating her parental rights as to her two children, Crystal J. and Scott S., following a selection and implementation hearing held in accordance with Welfare and Institutions Code[1] section 366.26. Mother contends the judgment should be reversed and a new hearing held because (1) the assessment report prepared by the department of social services was deficient, constituting a deprivation of constitutional due process rights and resulting in insufficient evidence to support the judgment, and (2) the failure of minors' counsel to object to the report constituted prejudicial ineffective assistance of counsel.

FACTUAL AND PROCEDURAL BACKGROUND
The children were removed from mother's custody in June 1989 because mother was a methamphetamine addict and as a result thereof could not care for her children. At the time of assertion of county custody Crystal was 10 years old and Scott 6 years old. Neither child was ever returned to mother's custody. The respective fathers of the two children took no part in the proceedings and do not appeal the judgment.
Crystal was eventually placed with her maternal aunt and her husband in Idaho, the family subsequently moving to Okinawa. It is the desire of the aunt and her husband to adopt Crystal, and Crystal concurs in that objective. Scott encountered difficulties with foster home placement, but eventually found happiness with a single male foster parent who desires to adopt him and has been cleared for adoption. Scott, also, indicates a desire to be adopted. The social workers' reports uniformly indicate that while the children know and love their mother and want to continue contacts with her, they emphatically do not wish to return to her custody.
The reunification efforts and series of hearings prescribed by the statutory scheme contained in section 300 et seq. were all carried out. Eventually reunification efforts were terminated and the cases set for a selection and implementation hearing in accordance with section 366.26. Mother and her attorney were present at this hearing, as was appointed counsel for the minors. After admission of the social service reports and oral testimony from various social workers (but no testimony by mother or on her behalf) the court found upon clear and convincing evidence that the children were likely to be adopted, that none of the exceptions provided in section 366.26, *411 subdivision (c)(1) existed, and that mother's parental rights should be terminated.

DISCUSSION

1. Alleged Deficiency of Assessment Report

Whenever a dependency case is referred for a selection and implementation hearing the court so ordering must require the agency supervising the child to prepare an "assessment." In this case the order of reference was made after a 12-month review hearing and hence the assessment was mandated by section 366.21, subdivision (i). The statute requires that the assessment contain a report of six specific subjects, including such matters as search efforts for absent parents, the minor's current contact with parents, an evaluation of the minor's medical and developmental status, whether the minor will be adopted, etc. The specific subportion of subdivision (i) deemed crucial by appellant is subportion (4), which requires a report of: "A preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the minor's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship."
In December 1990 the selection and implementation hearing was scheduled for January 18, 1991, and mother was sent notice. The statutorily required assessment report was filed with the court on January 15, 1991. The hearing was not held on that date, however, being continued for reasons not relevant to this appeal. As a result, supplemental assessment reports were prepared and filed with the court dated March 29, 1991, and June 25, 1991. The definitive hearing resulting in the order terminating parental relationship was held September 4, 1991.
(1a) Mother now contends that the totality of these several assessment reports was inadequate and did not fulfill the statutory requirements because (1) no report of criminal records or abuse referrals as to the adoptive parents was included; (2) there was no assessment of the financial stability of the adoptive parents; and (3) the reports were not sufficiently current. We note that no objection to the sufficiency of the assessment reports was made at time of trial, and refer to the familiar principle that failure to object to the admission of improper or inadequate evidence waives the right to raise the issue on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 307, p. 317.) If the complaint on appeal be deemed not the admissibility, as such, of *412 inadequate assessment reports, but substantive insufficiently to establish requisite findings, this complaint, too, was waived by failure to raise it at the trial level. (9 Witkin, supra, at § 311, p. 321.)[2]
Mother seeks to avoid the problem of waiver through failure to raise the issue at time of trial by contending that the deficiencies in the assessment reports constituted a violation of procedural due process. (2a) We of course would not dispute the proposition that parenting is a fundamental right the impairment of which requires strict adherence to procedural due process. (See In re Angelia P. (1981) 28 Cal.3d 908, 915 [171 Cal. Rptr. 637, 623 P.2d 198].) Mother misconstrues the application of this principle, however.
Procedural due process is defined in Tribe, American Constitutional Law (2d ed. 1988) at page 664 as follows: "The element of due process analysis characterized as `procedural due process' delineates the constitutional limits on judicial, executive, and administrative enforcement of legislative or other governmental dictates or decisions. [Fn. omitted.] This has traditionally involved the elaboration of procedural safeguards designed to accord to the individual `the right to be heard before being condemned to suffer grievous loss of any kind' as a result of governmental choices  which can take the form of acts or, less commonly, of omissions."
(3) Procedural due process thus focuses upon the essential and fundamental elements of fairness of a procedure which would deprive the individual of important rights. As stated in Fuentes v. Shevin (1972) 407 U.S. 67 at page 80 [32 L.Ed.2d 556, 569-570, 92 S.Ct. 1983]: "... the central meaning of procedural due process [is] clear: `Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' [Citations.] It is equally fundamental that the right to notice and an opportunity to be heard `must be granted at a meaningful time and in a meaningful manner.' [Citation.]"
(2b) Due process requirements in the context of child dependency litigation have similarly focused principally on the right to a hearing and the *413 right to notice. (In re B.G. (1974) 11 Cal.3d 679, 689 [114 Cal. Rptr. 444, 523 P.2d 244] [failure to give mother notice of hearing was a deprivation of due process].) A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses, and hence a failure to provide parents with a copy of the social worker's report, upon which the court will rely in coming to a decision, is a denial of due process. (In re George G. (1977) 68 Cal. App.3d 146, 156-157 [137 Cal. Rptr. 201].) (1b) Where an investigative report is required prior to the making of a dependency decision, and it is completely omitted, due process may be implicated because a cornerstone of the evidentiary structure upon which both the court and parents are entitled to rely has been omitted. (See In re Linda W. (1989) 209 Cal. App.3d 222, 226-227 [257 Cal. Rptr. 52].)
Where, however, the assessment report is prepared, is available to the parties in advance of the noticed hearing, and does address the principal questions at issue in the particular proceeding, errors or omissions in the report cannot be characterized in terms of denial of due process. (See In re Heidi T. (1978) 87 Cal. App.3d 864, 875 [151 Cal. Rptr. 263] [possible deficiencies in assessment report harmless error in light of other evidence]; In re Robert J. (1982) 129 Cal. App.3d 894, 901-902 [181 Cal. Rptr. 188] [irrelevant material in a report deemed not prejudicial because of independent evidence supporting the trial court's ruling].) Deficiencies in an assessment report surely go to the weight of the evidence, and if sufficiently egregious may impair the basis of a court's decision to terminate parental rights. Such deficiencies, however, will ordinarily not amount to a deprivation of procedural due process.
We agree that the assessment reports in this case failed in some respects to comply with the detail specified in section 366.21, subdivision (i), and specifically subportion (4) of that subdivision. There was no report as to any criminal record of the potential adoptive parents, nor was there any specific reference to their financial stability. In light of the particular facts of this case, however, these deficiencies seem insignificant. They appear not to have concerned the court or any counsel at the time of the hearing. Reviewing the totality of the evidence before the court, including not only the assessment reports but the written report of the court's special advocate and the live testimony of social workers familiar with the case, we conclude there was ample evidence to support the court's findings and judgment.

2. Ineffective Assistance of Minors' Counsel

Mother attempts to utilize the allegedly faulty assessment report as support for an alternative argument for reversal. (4) Since the report was *414 defective, able counsel should have objected to it, and the failure to do so constituted ineffective assistance of counsel requiring, it is argued, reversal. Curiously, mother does not raise this contention with respect to the competency of her own counsel, but complains of the failure of minors' counsel to raise the issue. We note that the minors had independent counsel at time of trial, and also were provided independent counsel on appeal. Cognizant of the claim by mother of ineffective assistance of counsel at trial, minors' counsel on appeal nevertheless joined in the position of county counsel in seeking affirmance of the judgment. Assuming competence of minors' appellate counsel (as to which no adverse claim is made) we cannot understand why any failure of trial counsel may not now be waived by appellate counsel.
However, we are aware of authority which stands for the proposition that impairment of adequate representation of the minor may be raised on appeal by the parent. (In re Ann S. (1982) 137 Cal. App.3d 148, 150 [188 Cal. Rptr. 1]; In re David C. (1984) 152 Cal. App.3d 1189, 1206 [200 Cal. Rptr. 115].) We therefore return to the record to determine whether mother has demonstrated counsel's failure to provide reasonable representation and resulting prejudice. (Strickland v. Washington (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052].) We find no such demonstration. This was a case in which everyone at the hearing, including apparently both mother and her counsel, agreed that mother's past conduct had severely damaged her children, and that she was probably not in a current position seriously to argue against termination of her rights. As best we can gather, minors' counsel both at trial and in this appeal were best advised, tactically, to support termination of mother's rights. In this light it seems hardly logical to assert that these counsel were derelict in not raising impediments to this result.

DISPOSITION
The judgment is affirmed.
Benke, Acting P.J., and Huffman, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 1, 1993. Kennard, J., was of the opinion that the petition should be granted.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Not only did counsel for mother not raise, at time of trial, any contention of inadequacy of the assessment reports, but counsel as much as conceded the substance of the case. Concerning Scott, counsel stated (presumably with the approval of mother, who was present): "The dilemma she is faced with as to Scott, in light of the evidence that is before the court, is on the one hand she wants your honor to know that she honestly doesn't know in her own heart whether it would be better after now, having somewhat of a personal relationship with this prospective adoptive father, to say we're not even going to argue farther [sic]. Proceed with the adoption immediately.

".... .... .... .... .... .... ....
"So I'm just going to submit on her behalf as to Scotty with no arguments, submit on the evidence before the court. And she does know what that submission means in terms of the likely order of the court, but the Department can accept it."