Filed 5/16/22  In re R.G. CA2/5

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re R.G., Person Coming Under Juvenile Court Law. | B315712 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.G.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP00954B) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge, Pro Tempore. Conditionally reversed and remanded with directions.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Mother appeals from an order terminating parental rights to her son under Welfare and Institutions Code section 366.26.[1] She contends the juvenile court erred when it found the parent-child beneficial relationship exception to the termination of parental rights inapplicable and asserts the reports submitted in support of termination by the Los Angeles County Department of Children and Family Services (DCFS) were inadequate. Mother also argues DCFS failed to comply with section 224.2, subdivision (b)—the California statute implementing the initial inquiry rules of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We conclude mother forfeited her challenge to the adequacy of DCFS's reports. We conditionally reverse and remand for DCFS to comply with its ICWA inquiry statutory responsibilities.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has four children. When these dependency proceedings commenced, her three older children were under the jurisdiction of the dependency court, following their detention from mother in 2015 due to domestic violence.[2] The three older children are son's half-siblings. Mother never reunified with these children because of continuing domestic violence and drug abuse.

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     Mother's third child was detained shortly after birth in 2017. The father of the three older children is not the father of mother's youngest child who is the subject of this appeal.

2

1. ***Detention and Jurisdiction***

In late April 2019, Mother gave birth to son, the dependent in this case. One month later, police arrested mother for possession of methamphetamine. On July 5, 2019, DCFS filed a petition pursuant to section 300, alleging son was at risk of harm due to mother's substance abuse. Three days later, the court detained son from mother's custody. On August 16, 2019, DCFS filed a first-amended section 300 petition, alleging both parents' substance abuse endangered son.

On August 20, 2020, the juvenile court sustained the section 300 substance abuse allegations against the parents, declared son a dependent, removed him from parental custody, granted the parents monitored visits, and ordered reunification services. The court ordered mother to participate in a domestic violence program; random or on-demand drug testing, and a drug program if any tests were missed or dirty; a 12-step program; parenting classes; and individual counseling. During visits, mother was loving and affectionate toward son. She actively engaged with son and was attentive toward him. She listened to music with him, watched videos with him, and taught him how to go down a slide. Mother brought son toys, crafts, food, and snacks. Son was responsive to mother's affection, laughing and smiling during visits. He blew kisses to mother when visits ended. Caregivers noted son had no trouble transitioning when he returned from visits.

Mother failed to complete the court ordered programs, repeatedly missed drug tests, and tested positive for methamphetamine. Mother's visits were never liberalized because of her positive methamphetamine tests and failure appear for many drug tests.

At the April 5, 2021 six-month review hearing, the juvenile court terminated reunification services and set a selection and implementation hearing pursuant to section 366.26.

## 2.  *ICWA Inquiry Efforts*

In one of its reports, DCFS noted that in an August 2015 minute order from the half-siblings' dependency case, the juvenile court found it had no reason to know the two oldest half-siblings were Indian children.  The report did not indicate that DCFS contacted mother's extended family members in the half-siblings' cases.

In May 2019, DCFS interviewed the maternal grandmother, but there is no evidence DCFS inquired about Indian ancestry.

Several times, both parents verbally denied Indian ancestry when DCFS asked.  On July 8, 2019 and December 9, 2019, mother and father respectively filed Parental Notification of Indian Status (ICWA-020) forms declaring, "I have no Indian ancestry as far as I know."[3]  In July 2019 and December 2019, the court found it did not have reason to know son was an Indian child based on the ICWA-020 forms.

---

[3]  The ICWA-020 form stated:  "To the parent, Indian custodian, or guardian of the above-named child:  You must provide all the requested information about the child's Indian status by completing this form.  If you get new information that would change your answers, you must let your attorney, all the attorneys on the case, and the social worker or probation officer, or the court investigator know immediately and an updated form must be filed with the court."  The bottom part of the form provided:  "Note:  This form is not intended to constitute a complete inquiry into Indian heritage.  Further inquiry may be required by the Indian Child Welfare Act."

4

In July 2020, DCFS spoke to the paternal great aunt, but the record does not disclose that DCFS asked about Indian ancestry.  Nothing in the record indicates DCFS discussed Indian ancestry with son's extended family members.

### 3.    *Section 366.26 Hearing*

At the September 23, 2021 section 366.26 hearing, the court received into evidence the section 366.26 reports and a June 2021 Last Minute Information for the Court Report.[4]  The juvenile court took judicial notice of the sustained petition, all court ordered case plans, and all court orders and findings.  No party objected to admission of the evidence.  Although mother planned to testify at the hearing, she did not appear, and her counsel was unable to reach her.

DCFS argued that son was adoptable and no exception to adoption applied.  DCFS requested the court terminate parental rights.

Counsel for mother opposed termination and argued, "mother would be arguing the [section 366.26, subdivision] (c)(1)(B)(i) exception.  [¶]  It's quite clear that throughout the duration of this case, mother has maintained contact with the minor.  She visits regularly, and she indicated to me -- [¶] . . . [¶]  that she has a strong bond with the child.  [¶] Submitted."  Father' counsel stated he had no direction from his client, but he objected for the record.

Son's counsel argued for termination of parental rights, asserting that son will be adopted and no exceptions applied. Son's counsel explained:  "It does appear that mom did maintain regular visitation with the child during the month[s] of June and

---

[4]    An attachment to one of the section 366.26 reports noted: "Parents [*sic*] visits are good.  Parents are engaging and loving."

July.  However, despite her recent consistent visits, there is no bond between mom and the child that rises to the level of the [section 366.26, subdivision] (c)(1)(B)(i) exception.  [¶]  The child has been placed in his current caregiver's care since he was three months old.  It has been two years since he resided with them. He has a healthy and positive attachment to his caregivers, and they continue to provide him with a stable home.  [¶]  They are also committed to adopting him.  All adoption requirements have been completed and there are no current barriers to moving forward with the adoption."

The juvenile court found son was adoptable and no exception to adoption applied, terminated parental rights, and ordered adoption as the permanent plan.

Mother filed a timely notice of appeal, challenging the order terminating parental rights.  Father did not appeal.

## DISCUSSION

Mother argues the court's termination order should be vacated because DCFS failed to submit adequate reports to support the court's finding that the parent-child beneficial relationship exception was inapplicable.  Mother asserts reversal is also necessary for DCFS to comply with its duty of inquiry under the California statutes that implement ICWA.

1.     ***Mother Forfeited Her Challenge to the Adequacy of DCFS's Reports***

Mother asserts the juvenile court erred in terminating parental rights because the court was unable to make an informed decision due to DCFS's inadequate reports.  Mother has forfeited this argument by failing to object in the juvenile court. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to prepare section 366.22 assessment waived by failure to object

6

despite that provision's mandatory language]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411 [failure to object to the sufficiency of the adoption assessment reports at the section 366.26 hearing waived the right to raise the issue on appeal].) Courts "have repeatedly held that a party's failure to object forfeits appellate review of the adequacy of—or the failure to prepare—mandatory assessment reports in juvenile proceedings." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1508.)

Perhaps in recognition that DCFS would raise forfeiture in its respondent's brief (which it did), mother specifically disclaims reliance on the social worker's reports. Instead, she argues that because the social worker's reports were inadequate, the evidence was insufficient to support the trial court's findings that the parental benefit exception was unmet. This argument, too, does not survive. Mother, as movant, had the burden of establishing the parental benefit exception. (*In re Caden C.* (2021) 11 Cal.5th 614, 636.) Any failure of proof simply means the exception remains unestablished.

Finally, mother explains that her sufficiency of the evidence argument is not so much a failure of proof, but a failure of DCFS to present the court with sufficient information to enable it to make an informed decision. (See *In re B.D.* (2021) 66 Cal.App.5th 1218, 1230, fn. 5.) But this is simply a restatement of mother's forfeited argument that the DCFS's reports were inadequate, and meets the same fate. "If [mother] had brought this matter to the attention of the juvenile court, the court could have remedied any error. [Citation.] Allowing [mother] to raise [this] issue[] . . . for the first time on appeal would contravene the dependency law's objective of expediently providing a permanent home for children whose parents have

been unable to reunify with them." (*In re Desiree M.* (2010) 181 Cal.App.4th 329, 334.)

**2.   *DCFS's Failure to Comply with Section 224.2 Requires Conditional Reversal***

Mother argues DCFS failed to comply with state law requiring ICWA inquiry of extended family members, and the case must be remanded for the juvenile court to ensure DCFS properly investigates son's ancestry.

*a.   ICWA and the Standard of Review*

The juvenile court and DCFS have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10–11.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2020)), California statutes, and rules of court. (*In re T.G.* (2020) 58 Cal.App.5th 275, 290–291 (*T.G.*).) Here, we apply the statutes in effect in July 2021, when the section 366.26 hearing took place. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

By statute, DCFS's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (*Id.* at subd. (c).) Part of the initial inquiry includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).) When there is "reason

8

to believe that an Indian child is involved in a proceeding," further inquiry is required.  (§ 224.2, subd. (e); *T.G., supra*, 58 Cal.App.5th at p. 290, fn. 14.)

On undisputed facts, we make an independent determination whether ICWA's requirements have been satisfied. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.)

b.      *DCFS Failed to Comply with Section 224.2, Subdivision (b)*

Mother correctly contends DCFS had an obligation under section 224.2, subdivision (b) to ask the maternal grandmother and the paternal great aunt about Indian ancestry, as both are extended family members.  DCFS does not argue to the contrary.

Given DCFS's failure to interview the two extended family members, both of whom were involved in the dependency proceedings, the juvenile court's ICWA finding was error. "Nothing in section 224.2, subdivision (b), relieves the Department of its broad duty to seek that information from 'all relevant' individuals [citation] simply because a parent states on the ICWA-020 form, . . .  'I have no Indian ancestry as far as I know.'  Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*).)  In the circumstances present here, relying entirely on the parents' representations was error.

c.      *The Error Was Prejudicial*

DCFS acknowledges that this Court has found prejudice based on similar facts in *In re H.V.* (2022) 75 Cal.App.5th 433 (*H.V.*), an appeal decided by another of panel of this division. There, DCFS asked mother about the child's Indian ancestry, and mother "did not give the social worker any reason to believe the

9

child was or might be an Indian child." (*Id.* at p. 436.)  The social worker interviewed maternal great-grandmother and paternal great-grandfather, but failed to ask questions about the child's Indian heritage.  Mother also executed an ICWA-020 form in which she denied any knowledge of Indian ancestry.  (*Ibid.*)  In response to an inquiry from the juvenile court, mother (through counsel) "indicated that alleged father did not have Indian ancestry."  (*Ibid.*)

On the appeal from jurisdiction and disposition orders, DCFS did not contend it discharged its first-step inquiry.  It instead took the tack from the courts in *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069, and *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431, and argued that mother must make an affirmative representation of Indian ancestry or any error is deemed harmless.  (*H.V., supra*, 75 Cal.App.5th at p. 438.)  This court disagreed.  "Mother does not have an affirmative duty to make a factual assertion on appeal that she cannot support with citations to the record."  (*Ibid.*)  It found the error prejudicial and remanded for ICWA compliance.[5]  (*Id.* at pp. 438–439.)

---

[5]     Justice Baker, in his dissent in *H.V.*, decried ICWA's complexity, finding it anything but straightforward, a point with which we agree.  (*H.V., supra,* 75 Cal.App.5th at p. 440 (dis. opn. of Baker, J.).)  He concluded that under appropriate substantial evidence review, there was "substantial evidence supporting the juvenile court's determination that ICWA does not apply."  (*Id.* at p. 441.)

In another recent dissent that disagreed with the majority's finding that ICWA noncompliance was prejudicial, Judge Crandall, sitting on assignment, observed that any presumption of prejudice in this setting "provides parents with a last-minute,

In both this case and *H.V.*, DCFS went no further than to inquire of the parents. Equally telling is that in both cases, DCFS knew about extended family members – the maternal grandmother and paternal grandfather in *H.V.* and the maternal grandmother and the paternal great aunt in the present case – but asked them nothing about the child's Indian ancestry.[6]

DCFS asserts that we should not follow *H.V.* because doing so "leads to an absurd result." DCFS asserts that if we reverse, DCFS may be " 'left to follow a new unspoken rule: interrogate every person contacted in a child welfare investigation about ICWA issues and hope both the juvenile courts and reviewing courts will agree that is enough.' " We disagree and decline to depart from the court's analysis and resolution in *H.V.* DCFS is not left with a new rule, unspoken or otherwise—it is left to follow section 224.2, as it has been in effect since January 1, 2019. DCFS must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).)

---

readily-available delay tactic." (*In re A.C.* (March 4, 2022, B312391) 75 Cal.App.5th at p. 1024 (conc. & dis. opn. of Crandall, J.) For this and other policy reasons, the dissent found no prejudice. The majority's response was: "These arguments are grist for the legislative mill." (*Id.* at p. *5.)

[6] Arguably *In re H.V., supra*, 75 Cal.App.5th 433, is a stronger case for prejudice than the present one as the only information about father there came not from father or his family but from mother.

DCFS argues that "given that both mother and father denied Indian ancestry both verbally and in writing [citations], and mother makes no affirmative representation on appeal that additional inquiry with the maternal and paternal relatives would bear meaningfully on whether [son] was an Indian child, the juvenile court had sufficient information to find the ICWA did not apply." Family elders may well have firsthand or more accurate information about the family tree. (See *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["It isn't easy to track tribal affiliations and those connections are easily lost. . . . This case is a stark example of that dynamic, because the children's parents apparently had no idea of their family's connection to the Yaqui tribe of Arizona, even though the children's great-grandmother was a member and still lived with the grandparents in Colorado"].)

"Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry. Rather, in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435; see also *In re J.C.* (2022) 77 Cal.App.5th 70, 80–81 ["By failing to conduct an adequate inquiry, the Department virtually guarantees that the (incomplete) information it obtains will support a finding that ICWA does not apply" and such reasoning "allows the harmless error exception to swallow the rules governing the duty to

12

inquire"].)[7]  We must remand for the juvenile court to order DCFS to comply with its ICWA inquiry duties.

---

[7]      We do not suggest that in every case where initial DCFS inquiry is limited to the receipt of negative Indian ancestry on an ICWA-020 that error is automatically prejudicial.  There may be circumstances that make further inquiry unavailable or unnecessary.  For example, in *In re Darian R.* (2022) 75 Cal.App.5th 502, 510, the appellate court held that failure to inquire of the children's maternal aunt and grandfather was not prejudicial because in earlier dependency proceedings the juvenile court had found that the children did not have Indian ancestry.  That is not our case.

### *DISPOSITION*

The juvenile court's order terminating parental rights under section 366.26 is conditionally reversed solely based on inadequate ICWA compliance. The case is remanded to the juvenile court to ensure compliance with ICWA and related California law by ordering DCFS to inquire of available extended family members whether they have reason to believe minor is an Indian child. Based on the responses, if no additional inquiry is necessary, the court's original order shall be reinstated. If additional inquiry is required, DCFS shall comply with all applicable ICWA statutes and regulation, and related state law.

In all other respects, the order is affirmed.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J

14