Filed 12/14/22  In re A.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | C095351 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD240497) |
| Plaintiff and Respondent, | |
| v. | |
| K.R., | |
| Defendant and Appellant. | |

K.R. (mother) appeals from the juvenile court's orders terminating parental rights and freeing A.T. (the minor) for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1] Mother contends the juvenile court erred in finding that the beneficial parental relationship exception to adoption did not apply.  As part of her contention, she argues

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

the social worker's reports lacked objective reporting.  Because her argument regarding the social worker's reports is forfeited and her other arguments lack merit, we will affirm the judgment.

BACKGROUND

In March 2020, the Sacramento County Department of Child, Family and Adult Services (the Department) filed a section 300 petition on behalf of the then-two-year-old minor based on the unsanitary conditions of the home, the presence of controlled substances in the home and accessible to the minor, the minor having been left without adequate supervision, mother's untreated substance abuse, and mother's involvement of the minor and her half siblings in the distribution of controlled substances.  Mother and the minor's father were incarcerated on charges related to the allegations in the petition and the juvenile court ordered mother to have no contact with the minor pending further orders.

At mother's request, the minor was detained in the home of a nonrelated extended family member.  The minor adjusted well to her placement and appeared happy and comfortable.  The minor's caregiver reported she had toilet trained the minor within a few weeks of her placement.  The minor's half siblings (who are not part of this appeal) were placed with relatives in separate homes.  The minor and the siblings visited weekly. In July 2020, the juvenile court ordered supervised visits for mother.

The combined jurisdiction and disposition hearing did not take place until September 2020.  The juvenile court sustained the petition, adjudged the minor a dependent child of the court, and ordered reunification services.  Mother and father had already been participating in services and visiting the minor twice weekly.  The visits were held virtually during the pandemic but there were no expressed concerns about the visits.

In March 2021, the social worker reported that mother was living in a sober living home and looking for alternative housing.  According to the report, mother did not

2

understand how her substance abuse impacted her older children. She did not appear to be taking her sobriety seriously and there were concerns she was improperly using prescription drugs while pregnant with her fourth child, despite her participation in a drug treatment program. She repeatedly tested positive for opiates. Mother said her opiate use was minimal and that she took Norco as prescribed and only when necessary for pain. Father continued to test positive for controlled substances.

The minor was described as a sweet-natured child who had acclimated to the caregiver's home. She was observed by the social worker to be happy and well-mannered. Her siblings' relative caregivers were supportive and had maintained sibling visits. Mother was visiting the minor twice weekly for two hours. Visits had become in-person and they were observed by the caregiver. The visits had been appropriate, but mother had not progressed to unsupervised visits due to concerns about her sobriety. Shortly before the review hearing, mother completed a sobriety intake, received a referral, and tested negative on March 15, 2021. Consistent with the Department's recommendation, the juvenile court continued reunification services at the March 22, 2021 review hearing.

In May 2021, the Department recommended termination of reunification services. Mother's newborn had been placed in the home of the minor's caregiver at mother's request. The social worker reported that the minor was healthy with no developmental concerns. The minor was described as an active and engaging little girl who enjoyed playing with her toy kitchen and driving around the home in an electric car. She could count to 10 in English and Spanish. She was observed to be slightly reserved but would engage with the social worker in the presence of the caregiver. During each of the social worker's visits, the minor appeared to be happy. The minor called the caregiver "mama" and followed the caregiver's directions.

The juvenile court terminated reunification services on July 7, 2021, and set a section 366.26 hearing for the minor. In its subsequent report, the Department

recommended termination of parental rights and adoption for the minor. It had recommended legal guardianship for the minor's older half siblings, who did not wish to be adopted. Mother continued to visit the minor under the supervision of the caretaker. The caretaker reported no visitation safety concerns and no emotional or behavioral issues for the minor before, during, or after the visits. The Department determined there were no barriers to the minor's adoption and urged that termination of parental rights would be in the minor's best interests.

The section 366.26 contested hearing took place on November 30, 2021. The social worker's report noted that the minor was meeting all developmental milestones. The minor had an extensive vocabulary and was observed asking the caregiver, "Can I play with my toys Mama?" She also said, "I'll go get my shoes." The caregiver reported that the minor had full conversations with those around her and was almost reading. Department representatives had observed visits between the minor and the father but the social worker writing the report had not observed any of the father's visits because they took place on Saturdays, which conflicted with the social worker's schedule. Likewise, the social worker had not observed mother's visits with the minor because they took place after the social worker's work hours. The caregiver had observed mother's visits and reported that the visits went well and there were no safety concerns.

Mother's counsel argued that the beneficial parental relationship to adoption should apply and called mother as a witness. Mother testified that she visited twice a week for two hours, from 7:00 p.m. to 9:00 p.m. Mother said the minor recognized her, called her mom, momma Tina, and mommy, ran to her at the beginning of visits, and was excited to see her. Mother always brought the minor toys, and they would play with the toys she brought. During the visits mother sometimes baked cookies or cooked dinner. The visits usually included the minor's younger half sibling who also lived in the caregiver's home with the minor. According to mother, the minor would sometimes become upset when mother left, and the minor would even sometimes become somewhat

4

upset when mother would move her purse because the minor thought she was preparing to leave. Mother would reassure the minor that she was not leaving yet. Mother wanted the minor to be able to come home and she found it hard to leave at the end of visits.

Counsel for the Department argued that the minor was doing well in her placement, her older half siblings supported the minor's adoption, adoption would not be detrimental to the minor, and the caregivers were agreeable to maintaining the sibling relationships. Counsel for the minor argued that although there might be some benefit from the parent-child relationship, the benefit did not outweigh the minor's need for permanency. The juvenile court took the matter under submission.

At a continued hearing on December 6, 2021, the juvenile court found that the minor was likely to be adopted and that no exception to adoption applied. Regarding the beneficial parental relationship exception, the juvenile court said: "The parents argue that the termination of parental rights would be detrimental to [the minor]. The party raising the parental-bond exception must show that he or she occupies a parental role, not just that of a friendly visitor." The juvenile court summarized the burden of proof and the standard to be applied and said it found mother's testimony regarding the visits to be persuasive and genuine. Mother's visits had been consistent. Nevertheless, the juvenile court concluded: "In addition to maintaining regular visitation and contact with the child, parents needed to establish that [the minor] would benefit from continuing the parental relationship with her. The burden lies with the parents to show by a preponderance of the evidence that the relationship between the parent and the child promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with a new adoptive parent, which is not proven here."

The juvenile court terminated parental rights and freed the minor for adoption.

## DISCUSSION

Mother contends the juvenile court erred in finding that the beneficial parental relationship exception to adoption did not apply. As part of her contention, she argues

5

the social worker's reports lacked objective reporting. We first address the argument regarding the social worker's reports.

A

Mother argues the social worker's reports lacked objective reporting. The Department counters that mother forfeited her argument because she did not assert it in the juvenile court. We agree with the Department that mother forfeited the argument. There is no indication in the record that mother asserted this specific argument in the juvenile court, and in fact, at the section 366.26 hearing, which culminated in the only order currently before this court, the juvenile court asked if there was any objection to the admission of the social worker's section 366.26 report and mother's counsel stated he had no objection. Accordingly, mother forfeited her argument that the social worker's reports lacked objective reporting. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1508-1509.)

B

Mother contends the juvenile court erred in finding that the beneficial parental relationship exception to adoption did not apply.

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).) One such exception is the beneficial parental relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

6

To establish the beneficial parental relationship exception, the parent must show by a preponderance of the evidence (1) regular contact with the child, (2) a relationship that if continued would benefit the child, and (3) that the termination of parental rights would be detrimental to the child. (*In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*).) In assessing whether termination would be detrimental, the juvenile court "must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.)

We review the juvenile court's findings for substantial evidence in considering whether there was regular contact and a beneficial relationship. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) We do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts' " and we will uphold the juvenile court's determinations even when substantial evidence to the contrary also exists. (*Id.* at p. 640.) As to whether termination of parental rights would be detrimental to the child, we review the juvenile court's determination for an abuse of discretion. (*Ibid.*) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id.* at p. 641.)

Mother argues she and the minor have a substantial beneficial relationship the continuation of which would benefit the minor. She contends it was improper for the juvenile court to say that she must show she occupies a "parental role."

The court in *In re Katherine J.* (2022) 75 Cal.App.5th 303 (*Katherine J.*) recently explained that a "popular way in which courts have tried to discern the presence of 'the mysterious X factor' that transforms a person from a mere 'friendly visitor' to a parent with ' "a substantial, positive, emotional attachment" ' to [her] child is by analyzing whether the person occupies a 'parental role' in the child's life. [Citation.] However, this analytic tool has the potential to create more problems than it solves" because the words " ' "parental role," standing alone can have several meanings' ranging from 'the person whom the child regards as his or her parent,' the person who demonstrates the

7

'nurturing, supportive, and guiding' characteristics traditionally associated with 'good' parenting, or 'giving parental care' through such activities as 'changing diapers, providing toys and food, and helping with homework.' " (*Katherine J*., at p. 319, quoting *In re L.A.-O* (2021) 73 Cal.App.5th 197, 210.) "While each of these definitions may be useful as factors to determine the strength of a parent's relationship with their child, none is dispositive on its own." (*Katherine J*., at p. 319, italics omitted.) The court in Katherine J. said it would be helpful for a court to explain the meaning it intends. (*Ibid.*)

Here, although the juvenile court used the words "parental role," it also explained what it meant: that mother had the burden to show that she was more than a friendly visitor. The statement was consistent with applicable law. To show that continuation of the parental relationship would benefit the minor, mother had to show something more than the incidental benefit the minor gained from her positive contact with mother. (*Katherine J., supra*, 75 Cal.App.5th at pp. 318-319.)

There appears to be little if any dispute regarding the first and second elements of the beneficial parental relationship exception, that mother had regular contact with the minor and that mother and the minor had a relationship that, if continued, would have benefitted the minor. The record indicates the juvenile court focused on the third element, concluding mother had not established that termination of parental rights would be detrimental to the minor. As to that conclusion, mother argues there had been improper references to the caregiver's willingness to maintain post-adoption contact with the parents. But those references appear to have been made by the social worker and the Department's counsel, not the juvenile court. (See *Caden C., supra*, 11 Cal.5th at p. 633 ["Because terminating parental rights eliminates any legal basis for the parent or child to maintain the relationship, courts must assume that terminating parental rights terminates the relationship"].) We presume the juvenile court complied with the law (see, e.g., *People v. Jones* (2017) 3 Cal.5th 583, 616), and the fact that the juvenile court said it had considered the evidence in the case does not overcome this presumption. In addition, the

8

juvenile court's question regarding post-hearing visitation does not establish that it based its decision on post-adoption contact. Post-hearing and post-adoption contact would be different matters, but in any event, the juvenile court was satisfied with the explanation that there was no order for post-hearing visitation because parental rights had been terminated.

## DISPOSITION

The juvenile court's orders terminating parental and rights freeing the minor for adoption are affirmed.

                                                          /S/
                                                   MAURO, J.

We concur:

     /S/
HULL, Acting P. J.

     /S/
HOCH, J.

9