Filed 5/18/23  In re N.J. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re N.J., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B323577 (Super. Ct. No. J073039) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.J. et al.,<br><br>    Defendants and Appellants. | |

S.C. (Mother) and J.J. (Father) appeal from the juvenile court's order terminating parental rights to their minor son, N.J., and selecting adoption as the permanent plan.  (Welf. & Inst. Code,[1] § 366.26.)  Mother contends: (1) the court erred when it

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

concluded that the beneficial parent-child exception to adoption does not apply. (§ 366.26, subd. (c)(1)(B)(i).) Father contends: (2) the court erred when it summarily denied his request to reconsider its order bypassing reunification services. (§ 388, subd. (a)(1).) We affirm.

FACTUAL AND PROCEDURAL HISTORY

N.J. is Mother's fifth child, her second with Father. When N.J. was born in February 2022, Mother said he was Father's child. Father said he was "unsure" that was true because he had not had contact with Mother for nearly a year. Even if it were, Father said that he was uninterested in "doing the whole drama" with Mother and did not "have the energy" to participate in another child welfare case.

All four of N.J.'s siblings have been taken into protective custody due to their parents' drug use and domestic violence. Shortly after his birth N.J. entered protective custody because he exhibited signs of methamphetamine and fentanyl withdrawal. He was placed with his maternal grandmother, who had already adopted N.J.'s three oldest siblings.

The juvenile court held a detention hearing when N.J. was just a few weeks old. Mother attended the hearing, but Father did not. At the hearing a Ventura County Human Services Agency (HSA) social worker said that N.J.'s grandmother reported that Mother had visited her son and acted appropriately toward him. The court found Father to be N.J.'s presumed father. The social worker called Father multiple times over the next month to discuss the matter, but the two never spoke.

Mother attended the combined jurisdiction and disposition hearing in May. Father did not. At the hearing Mother said that she visited N.J. daily. She fed him, changed his diaper, held him,

2

and talked to him. She also watched movies with him and his older siblings. HSA social workers nevertheless recommended bypassing reunification services based on Mother's prior resistance to drug treatment services, her failure to reunify with N.J.'s siblings, and the termination of her parental rights to three of those children. The juvenile court agreed with HSA's recommendation and set a section 366.26 hearing.

In June, Father told the social worker that he had recently seen pictures that led him to believe that N.J. was, in fact, his son. He requested a paternity test. The juvenile court granted his request.

Father took the paternity test in August. It confirmed that N.J. was his biological child. Father filed a section 388 petition after he received the results, asking the juvenile court to reconsider its order bypassing reunification services. He alleged the results of the paternity test constituted changed circumstances that warranted reconsideration. Additional changed circumstances included that Father had been in a sober living program for more than 18 months, had taken parenting classes, and had "consistently requested visits" with N.J. Father also claimed that it was in N.J.'s best interests to be connected to his biological family.

The juvenile court summarily denied Father's petition for the following reasons: Father had been reluctant to get involved in N.J.'s case for several months and did not attend any of the initial hearings. He failed to randomly drug test and had a criminal history. His statement that he "consistently requested visits" with N.J. was not true.

Father filed a second section 388 petition 10 days later, again requesting reunification services and visitation with N.J.

3

Father alleged he had requested visitation in June, and again in September. The juvenile court denied this petition, finding that the visitation requests did not show a change in circumstances and that reconsideration of its prior orders was not in N.J.'s best interests.

The section 366.26 hearing was held in September. At the hearing the HSA social worker said that the maternal grandmother had reported that Mother was not helping much with N.J. Mother no longer visited N.J. daily. When Mother was present in the house she was usually sending text messages or using social media. She did not change N.J.'s diaper, feed him, or help clean his bottles.

Mother testified that the maternal grandmother had never raised concerns about her visits. The reduction in visitation only lasted two weeks. Mother holds N.J. nearly the entirety of each visit and helps care for him. She only uses her phone to take pictures of her son. He smiles when he hears her voice and tries to reach for her.

During closing arguments, Mother argued the beneficial parent-child relationship exception to adoption applies because she had visited N.J. almost daily and had a close bond with her son. She urged the juvenile court to select guardianship as the permanent plan. The court declined to do so. It found that the beneficial parent-child relationship exception does not apply and terminated parental rights.

## DISCUSSION

*The beneficial parent-child relationship exception to adoption*

Mother contends the juvenile court erred when it concluded that the beneficial parent-child relationship exception to adoption does not apply. We disagree.

4

A juvenile court may not terminate parental rights if the parent establishes, by a preponderance of the evidence, that: (1) they have regularly visited their child, (2) "the child would benefit from continuing [a] relationship" with them, and (3) "terminating the relationship would be detrimental to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*); see § 366.26, subd. (c)(1)(B)(i).)  The first of these elements is not at issue here.  As to the second, courts must consider "a slew of factors, such as 'the age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs' " to determine whether the child would benefit from a continued relationship with the parent.  (*Caden C.*, at p. 632.) Courts should also "consider how children feel about, interact with, look to, or talk about their parent[]" when assessing this element.  (*Ibid.*)  We review it for substantial evidence.  (*Id.* at pp. 639-640.)

As to the third element of the beneficial parent-child relationship exception, the juvenile court "must decide whether it would be harmful to the child to sever the relationship and choose adoption."  (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)  "What courts need to determine, therefore, is how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life."  (*Ibid.*)  "In each case, then, the court acts in the child's best interest in a specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Ibid.*)  " 'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment

5

such that,' even considering the benefits of a new adoptive home, termination would 'harm' the child, the court should not terminate parental rights." (*Ibid.*) We review this element for abuse of discretion. (*Id.* at p. 640.)

### 1. *Whether N.J. would benefit from continuing his relationship with Mother*

Substantial evidence supports the juvenile court's determination that N.J. would not benefit from continuing his relationship with Mother. N.J. was just seven months old when Mother's parental rights were terminated. He had never been in Mother's custody, and had instead spent his entire life in the custody and care of his maternal grandmother.

Additionally, none of the interactions between Mother and N.J. was notably positive or negative: During the first months of visitation Mother fed her son, changed his diaper, and watched movies with him. But her visits were always supervised. And in later months Mother no longer visited N.J. daily—and when she did, she was often on her phone sending text messages or using social media. She also did not take care of N.J.'s particular needs: She did not feed him, clean him, or attend his medical appointments. And though N.J. did smile and reach for Mother when he heard her voice, such friendly interactions are not enough to depart from the statutory preference for adoption. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468 (*Angel B.*).)

Mother counters this conclusion by pointing to evidence in the record demonstrating the "engaging and affectionate" nature of her frequent visits with N.J. We recognize this evidence and commend Mother for attempting to have a positive, emotional bond with her son. But there is also evidence to the contrary in the record. And it is not the province of this court to reweigh

6

evidence and substitute our judgment for that of the court below. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Mother also argues that, in concluding N.J. would not benefit from continuing his relationship with her, the juvenile court relied on "woefully inadequate" reports from the social worker. But Mother did not object to the reports during the proceedings below. Her argument is forfeited.[2] (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412.) Substantial evidence supports the finding that N.J. would not benefit from continuing his relationship with Mother. (*Angel B.*, *supra*, 97 Cal.App.4th at p. 468.)

## 2. *Whether terminating his relationship with Mother would be detrimental to N.J.*

The juvenile court did not abuse its discretion when it concluded Mother failed to show it would be detrimental to N.J. to terminate his relationship with her. Mother offered no expert opinion as to how terminating the relationship would affect N.J. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 689-690; *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1207.) Nor did she offer any other evidence suggesting that terminating parental rights might lead to N.J. suffering from "emotional instability and preoccupation leading to acting out, difficulties in school,

---

[2] Neither of the cases on which Mother relies is to the contrary. The court in *In re J.D.* (2021) 70 Cal.App.5th 833, 861, "express[ed] no opinion" about the adequacy of the social worker reports there. And in *In re D.M.* (2021) 71 Cal.App.5th 261, 270, there was no indication that the father in that case failed to object to the social worker reports. " ' "[C]ases are not authority for propositions not considered." ' " (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.)

insomnia, anxiety, or depression." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)

Indeed, Mother's sole argument on appeal is that the juvenile court should have applied the beneficial parent-child exception to adoption because there was "no indication" that her interactions with N.J. were "not positive." That, however, is not the *Caden C.* standard. Rather, for the exception to apply, Mother had the burden to prove, by a preponderance of the evidence, that terminating parental rights would be detrimental to N.J. She points to no evidence in the record that would support such a determination. She has thus failed to show that the juvenile court abused its discretion when it declined to apply the exception.

*Summary denial of the section 388 petition*

Father contends the juvenile court erred when it denied his request to reconsider its order bypassing reunification services without holding an evidentiary hearing. We disagree.

Section 388 permits the parent of a dependent child to "petition the [juvenile] court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).) The court must liberally construe the petition and determine whether the parent seeking modification has made " 'a prima facie showing to trigger the . . . hearing.' " (*Ibid.*) This requires the parent to demonstrate both: "(1) a genuine change of circumstances," and (2) that "revoking the previous order would be in the [child's] best interests." (*Ibid.*)

A juvenile "court may consider the entire factual and procedural history of the case" to determine whether a prima facie showing has been made. (*In re Justice P.* (2004) 123

8

Cal.App.4th 181, 189.)  Such a showing is not made "unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  If the allegations in the petition "do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the . . . court need not order a hearing" and may summarily deny the petition.  (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 250; see also Cal. Rules of Court, rule 5.570(d)(1).)  We review such a denial for abuse of discretion.  (*Anthony W.*, at p. 250.)

There was no abuse of discretion here.  In his section 388 petition, Father alleged he had "consistently requested visits with his son" and made "efforts to establish contact with [N.J.] early on in [his] life."  But as the juvenile court reasonably concluded, Father showed little interest in his son for the first few months of his life: The HSA social worker contacted Father about N.J. soon after his birth, but Father refused to meet with her or discuss N.J.'s case, saying that he did not believe N.J. was his son.  He refused to take a paternity test, claiming that he "[didn't] have the energy" to go through another child custody case.  He also refused to involve himself in the court proceedings involving N.J., and did not attend the initial detention hearing or the combined jurisdiction and disposition hearing.  Such conduct toward his son's circumstances undercuts Father's allegations that he tried to become involved in N.J.'s life.

Father also argues his progress toward sobriety constitutes changed circumstances to warrant an evidentiary hearing on his petition.  But all the evidence he points to in support of this argument predates N.J.'s birth.  Father does not explain how this

9

evidence demonstrates a change in the circumstances after the juvenile court bypassed reunification services.

And even if he had, summary denial of Father's section 388 petition was proper. When Father filed his petition, he had yet to meet N.J. N.J. lived with his maternal grandmother and three of his siblings. His grandmother wanted to adopt him and raise him with his siblings—siblings the grandmother had already adopted. Given such a stable setting, the court did not abuse its discretion when it concluded that ordering reunification would not be in N.J.'s best interests.

DISPOSITION

The juvenile court's order terminating Mother's and Father's parental rights and selecting adoption as the permanent plan, entered September 21, 2022, is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.


10

Tari L. Cody, Judge

Superior Court County of Ventura

_____

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant J.J. (Father).

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant S.C. (Mother).

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.