Filed 10/9/23  L.T. v. Superior Court CA4/2
See Concurring Opinion

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| L.T., | |
| Petitioner, | E081916 |
| v. | (Super.Ct.Nos. J293732 & J293733) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | OPINION |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cara D. Hutson, Judge.  Petition denied.

Stephanie H. Veniez for Petitioner.

No appearance for Respondent.

1

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Real Party in Interest.

I.

INTRODUCTION

L.T. (Mother) seeks extraordinary relief from the juvenile court's order terminating reunification services and setting a Welfare and Institutions Code[1] section 366.26 permanency planning hearing for her two children, 16-year-old Na. (born January 2007) and 15-year-old No. (born July 2008).  Mother challenges the court's finding that she received reasonable reunification services and believes the court should have extended her services to the 18-month date.[2]  We deny the petition.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Prior Dependency*

Mother's prior child welfare history indicates that she had numerous referrals relating to substance abuse, domestic violence, and mental health issues.  In 2005, the children's half sibling M.N. ingested methamphetamine when he was only 17 months' old while in Mother's care.[3]  Mother was offered reunification services from

---

[1]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  N.E. (Father) is not a party to the writ petition.

[3]  M.N. passed away in 2021 from a drug overdose.

February 2005 until January 2008 and successfully reunified with her children. Additionally, Na. was detained from the parents in June 2007 due to their substance abuse. Also, from August 2008 until March 2009, the parents participated in a voluntary family maintenance case plan for No. The parents participated in their services and the case was dismissed in March 2009. In total, Mother had approximately 21 prior referrals out of Los Angeles County from 2005 until 2022.

B. *Current Dependency*

Na. and No. came to the attention of the San Bernardino County Children and Family Services (CFS) in May 2022, after a referral was received alleging general neglect and emotional abuse by Mother related to Mother's substance abuse history, domestic violence between Mother and Father in the presence of the children, Father's absence, and Mother's failure to provide for the children's special medical needs. Both children suffered from several medical conditions. Na. was on a medication regimen for thyroid issues, but Mother was inconsistent with the treatment. No. suffered from developmental delays and short bowel syndrome, which required No. to receive intravenous nutrition by way of total parental nutrition. Mother, however, left No. for prolonged periods of time expecting her then 14-year-old daughter Na. to care for No. The social worker asked Mother to submit to on-demand drug testing twice—on June 22 and June 24, 2022. Mother failed to test on both occasions.

Due to Mother's missed drug tests, recent domestic violence, and extensive child welfare history, CFS sought a detention warrant for the children on July 7, 2022. The

3

social worker contacted Mother by phone and advised her of CFS's intent to take the children into temporary protective custody. Mother told the social worker "'Fuck you,'" and disconnected the call. On this same day, the social worker, accompanied by law enforcement, attempted to serve the detention warrant at Mother's residence. Mother and the children were not home. Mother had been residing with the maternal grandmother who reported the children's belongings were gone. The maternal grandmother suspected that Mother had taken the children to Los Angeles County to her boyfriend's residence. The maternal grandmother did not know his address or the phone number.

On July 11, 2022, petitions were filed on behalf of the children pursuant to section 300, subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (abuse of a sibling). The children were detained the following day. Mother was ordered to drug test and was granted authority to participate in No.'s medical appointments if she was no longer a risk to the children.

Mother believed Father made the referrals to CFS "out of spite," but eventually admitted that she had relapsed after her son died due to an overdose. She, however, minimized her drug use, claiming that "it [was] not as big a problem like before." Mother denied leaving No. without supervision for extended periods of time, but acknowledged that she and Father had engaged in domestic violence. She claimed that she was willing to participate in services and was interested in therapy. The social worker believed that Na. was severely parentified as she reported taking care of her brother in the parents' absence, and that Na.'s worry about her brother's well-being

4

contributed to her anxiety and panic attacks. CFS recommended reunification services for Mother with a case plan that included a domestic violence program, general counseling, psychotropic medication evaluation, parenting education, substance abuse treatment, and drug testing.

The jurisdictional/dispositional hearing was held on August 2, 2022. The court dismissed an allegation regarding Mother's untreated mental health and an allegation against Father concerning his ability to provide for the children, and sustained the remainder of the allegations in the petitions. Mother submitted on the recommendation for reunification services and requested an inpatient substance abuse treatment. The court declared the children dependents of the court and provided the parents with reunification services and supervised visits once a week for two hours.

No. and Na. were placed separately. No. was initially placed in a medically fragile placement where he was physically aggressive with the caretakers and the other children in the home. He also acted out sexually. As a result, the caregivers requested an immediate removal. In September 2022, No. was placed with Mr. and Mrs. W. Mrs. W. is a registered nurse and was able to care for No.'s special medical needs. Mr. and Mrs. W. provided No. with his medications 24 hours a day, made sure he attended school, and took him to all his doctor's appointments. In October 2022, Na. was placed with her maternal grandmother.

Mother was referred to substance abuse counseling, a domestic violence program, individual therapy, parenting education, and drug testing. Mother had yet to complete her

5

case plan. She failed to drug test on 12 different occasions and tested negative once. It also appeared that Mother had moved out of the county and resided in Los Angeles County where she was looking for employment. Mother visited the children on a weekly basis supervised by the maternal grandmother and the visits went well. However, Mother brought her new boyfriend to the visits with the children.

At the February 2, 2023, six-month review hearing, Mother's counsel reported that Mother was randomly drug testing at a site in Los Angeles County. However, Mother did not provide any results or receipts, and the court asked Mother "to provide all those receipts to the Agency." Mother also averred that she was enrolled in an outpatient substance abuse program, and complained that there was "trouble getting in touch with CFS to set [ ] up [make-up visits]." In response, CFS's counsel noted that Mother had never previously raised any concerns contacting CFS and that counsel was unable to investigate or verify whether the contention was true. Counsel requested that Mother update her mailing address and telephone number. The court granted the request. Minor's counsel raised the issue of Mother bringing unauthorized third parties, namely her boyfriend, to her visits with the children. The court found by clear and convincing evidence that reasonable services had been provided to the parents and continued services for the parents.

By the 12-month review hearing, CFS recommended terminating reunification services for the parents and setting a section 366.26 hearing for legal guardianship. Although Mother had been referred to substance abuse counseling, domestic violence

6

education, individual therapy, parenting education, and drug testing, she had not completed the majority of her case plan. Mother failed to randomly drug test as requested by CFS, missing seven drug tests during this reporting period, and had not made herself available to the social worker. On July 7, 2023, the social worker provided Mother with a multitude of drug testing sites throughout California. Yet, Mother again failed to show up for drug testing. There was no evidence that Mother was sober, and she continued to live with her boyfriend without any participation in the children's care or welfare. Mother also misrepresented her participation in services to the social worker. In January 2023, Mother reported that she was taking substance abuse classes at Claremartix in Ontario. However, when the social worker contacted the facility on July 6, 2023, she was advised that Mother had never enrolled for services at that site. On July 7, 2023, Mother presented a letter from Conclusions Treatment Center stating that she had enrolled in substance abuse treatment a few days prior on June 30, 2023. Mother had completed a parenting education program and domestic violence classes at White Stone Counseling on February 23, 2023, and January 17, 2023, respectively.

During this reporting period, Mother was inconsistent in visiting with the children. She continued to reside in Torrance with her boyfriend who transported Mother to visits with the children. When asked about the inconsistent contact with the children, Mother "always ha[d] an excuse [why] she ha[d] not been visiting." From October 6, 2022, until June 30, 2023, Mother only visited the children three times and had not called to check on them. Mother also failed to attend No.'s medical appointments and did not visit No. at

7

the hospital during his almost two-week hospitalization in May 2023 for abscess treatment.

CFS inquired of the maternal grandmother of her interest in caring for No. However, the maternal grandmother reported that she would not be able to take legal guardianship of No. due to his special health care needs. Na. continued to reside with her maternal grandmother. Na. enjoyed living with her maternal grandmother, who transported Na. to school on a daily basis, took her to her medical appointments and visits, and provided Na. with security and stability. Na. reported that she did not want to move back to her parents' care. She feared she would regress if she moved back home with her parents. Na. requested to shorten and modify her visits with the parents to every other week so that she could have time with her friends on the weekend.

At a hearing on July 19, 2023, Mother's counsel noted "inconsistencies" in each child's report regarding the frequency of Mother's visits and suggested that Mother tested in Los Angeles County but presented no evidence to support the contention. Mother provided one negative drug test dated July 12, 2023. On August 1, 2023, the social worker contacted Mother requesting receipt for out-of-county testing. Mother never responded. CFS was also unable to verify whether she was attending individual therapy at White Stone Counseling where she had completed her parenting and domestic violence classes. CFS was unable to verify Mother's enrollment or progress in substance abuse counseling because Mother did not sign a consent form for CFS to speak with a

8

representative of Conclusions Treatment Center. As to visits with the children, since October 2022, Mother missed 17 visits with No. and visited him only seven times.

The contested 12-month review hearing was held on August 2, 2023. Mother appeared telephonically. Mother's counsel argued that Mother was consistent in visiting both children, that she had completed her parenting and domestic violence classes and claimed that Mother had completed counseling "for some time." Mother's counsel admitted that Mother had not "been super reachable," noting CFS had attempted to contact Mother but that Mother had not returned the social worker's calls. The children's counsel and CFS's counsel requested the court terminate services for both Mother and Father. As to Mother, the children's attorney noted that Mother still had not completed her case plan, there were questions as to whether Mother maintained her sobriety or benefitted from the services she had received, and more importantly, that Na. was not interested in reunification with Mother, whether or not Mother had completed her case plan. CFS's counsel, in part, stated Mother "was zero compliant with the substance abuse program and random drug testing components of her case plan which were central and critical to her reunification services." Following argument, the juvenile court found that CFS had provided Mother with reasonable services, Mother had failed to participate regularly and make substantive progress in her court-ordered case plan, and custody by Mother continued to be detrimental to the children's well-being. As such, the court terminated Mother's reunification services and set a section 366.26 hearing. Mother timely filed a notice of intent to file a writ petition.

9

III.

DISCUSSION

Mother contends the juvenile court should have continued her services to the 18-month date because CFS failed to provide her with reasonable services by not following up with her service providers. She believes CFS failed to make reasonable contact with Mother and reasonable efforts to assist her in complying with the case plan. CFS responds Mother forfeited her challenge to the adequacy of services because she never raised the issue in the court below and that substantial evidence shows CFS had provided Mother with reasonable services.

A. *Forfeiture*

At the outset, we address CFS's claim that Mother forfeited her reasonable services claim by failing to object in the court below. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court [and may not be raised for the first time on appeal]. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; see *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) Appellate courts have applied the waiver (forfeiture) doctrine in dependency proceedings in a variety of contexts in which the parent has failed to object, including situations in which the juvenile court has set a section 366.26 hearing after

10

determining that reasonable services had been provided.  (*In re Kevin S.* (1996) 41 Cal.App.4th 882, 885-886.)

In this case, Mother failed to object to the adequacy of the reunification plan or the services provided to her.  Instead, Mother argued that she had substantially completed her services "for some time" and complied with her case plan.  Mother also represented that she may be able to complete her case plan if given another six months of reunification services and asked the court to continue her services until the 18-month date of February 2023.  There was no argument made that the services provided to the parents were unreasonable.  Thus, she has forfeited her claim as to the reasonableness of the services offered in her plan.  Notwithstanding any forfeiture, Mother's claim lacks merit.

B.  *Substantial Evidence of Reasonableness Finding*

"In a juvenile dependency proceeding, a parent generally has a statutory right to reunification services when his or her child is removed from the parent's custody at a disposition hearing."  (*In re M.S.* (2019) 41 Cal.App.5th 568, 590; see § 361.5, subd. (a).) Reunification services are among the "[s]ignificant safeguards" that are built into the current dependency scheme.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307-308.)  As a result, the department must make a """"good faith effort"" to provide reasonable services responsive to the unique needs of each family through a plan that is "'specifically tailored to fit the circumstances of each family . . . , and . . . designed to eliminate those conditions which led to the juvenile court's jurisdictional finding."""  (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451 (*Taylor J.*).)

11

Reunification services are typically available to parents for a maximum of 18 months from the physical removal of the children from their home. (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1251.) At each review hearing, if the child is not returned to the custody of his or her parent, "the juvenile court is required to determine whether reasonable services that were designed to aid the parent in overcoming the problems that led to the initial removal and the continued custody of the child have been offered or provided to the parent." (*In re J.P.* (2014) 229 Cal.App.4th 108, 121.) At the 12-month status review hearing, if the juvenile court determines that a child should not be returned, it is required to terminate reunification services unless it finds (1) there is a substantial probability that the child will be returned within 18 months of the initial removal; or (2) reasonable reunification services were not provided to the parent. (§ 366.21, subd. (g)(1)(C); *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 (*Amanda H.*).)

The adequacy of the plan and the reasonableness of the department's efforts are judged according to the circumstances of the specific case. (*Taylor J.*, *supra*, 223 Cal.App.4th at p. 1451.) To support a finding that the department provided or offered reasonable services to the parent, the record should demonstrate the department "identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics

12

omitted; see *In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) "[I]n reviewing the reasonableness of the reunification services provided by [CFS], we must also recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.)

C. *Standard of Review*

We review the juvenile court's reasonable services finding for substantial evidence, bearing in mind the clear and convincing evidence burden of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.) Substantial evidence is that "'which is reasonable, credible and of solid value.'" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) In reviewing the record for substantial evidence, we "do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L. Y.L.* (2002) 101 Cal.App.4th 942, 947 (*L. Y.L.*).)

Our review is "limited to that period following the last reasonable services finding, which if unchallenged is final and binding." (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 675.) Here, the relevant period is between the six-month and 12-month review hearings, from February to August 2023. Mother has the burden to demonstrate

13

the evidence is insufficient to support the juvenile court's finding that CFS provided reasonable services. (*L. Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

D. *Analysis*

Mother has not satisfied her burden. The record is replete with evidence that CFS provided Mother with referrals for a substance abuse program, domestic violence education, individual therapy, parenting education, and drug testing. In July 2023, the social worker also provided Mother with a multitude of drug testing sites throughout California. However, although Mother had completed the parenting education and domestic violence component of her case plan, Mother failed to randomly drug test as requested by CFS or complete a substance abuse treatment program. Between the six-month hearing and the 12-month hearing, Mother had missed seven drug tests (once in March 2023 and twice in April, May, and June 2023). Mother claimed that she had drug tested in Los Angeles County, but failed to provide proof, even after requested by the juvenile court. Mother's longstanding history with drug addiction was the main reason identified by CFS that led to her losing custody of her children, and CFS had offered her services designed to remedy those problems. Yet, Mother failed to take advantage of the services offered to her. She continued to live with her boyfriend in Torrance without any participation in the children's care or welfare. There was no evidence that Mother was sober.

14

In addition, CFS attempted to maintain reasonable contact with Mother and made reasonable efforts to assist her in the substance abuse components of her case plan. However, as acknowledged by her counsel, it was Mother who failed to make herself available to the social worker and CFS. Mother also misrepresented her participation in services to the social worker. In January 2023, Mother reported that she was taking substance abuse classes, but when the social worker contacted the facility in July 2023, she was advised that Mother had never enrolled for services at that site. In July 2023, Mother presented a letter from Conclusions Treatment Center stating that she had enrolled in substance abuse treatment a few days prior on June 30, 2023. However, when the social worker attempted to contact the facility to follow up on Mother's progress in services, Mother thwarted those efforts by refusing to sign a consent form for CFS to speak with a representative of the treatment center. Further, Mother was inconsistent in visiting with the children. Despite CFS's efforts, it appears that Mother continued to abuse drugs throughout the dependency and likely stopped attending visits with her children due to her drug use. Moreover, Na. asked that her visits with Mother be shortened and modified to every other week so she could have time with her friends on the weekend. She also stated that she did not want to move back to her parents' care due to a fear that she would regress if she moved back home with her parents. In totality, the evidence in the record amply supports the juvenile court's finding that CFS's efforts were reasonable under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545-547 (*Misako R.*).)

Relying on *Amanda H.*, *supra*, 166 Cal.App.4th 1340, Mother blames CFS for not following up with her service providers or attempting to gather information about her compliance with her case plan. In *Amanda H.*, the appellate court held that reasonable services had not been provided to a mother whose services had included domestic violence counseling, parent education, and individual counseling. (*Id.* at p. 1343.) The social worker reported that the mother was participating in those services and was therefore on track to having the children returned, when in fact the mother was not actually enrolled in a program of domestic violence counseling separate from her individual counseling. The Court of Appeal acknowledged that "it was mother's responsibility to attend the programs and address her problems," but explained that "it was the social worker's job to maintain adequate contact with the service providers and accurately to inform the juvenile court and mother of the sufficiency of the enrolled programs to meet the case plan's requirements." (*Id.* at p. 1347.) Since the social worker's misrepresentation "may have thwarted mother's ability adequately to address . . . the fundamental problem that led to the children's detention," the services were not reasonable. (*Ibid.*)

In the instant case, the social worker made attempts to contact Mother's service providers at Conclusions Treatment Center, but Mother refused to provide releases that would have allowed the social worker to access specific information about the services and Mother's progress. This is not a case in which the social worker lacked access to information due to a lack of effort, and unlike in *Amanda H.*, the social worker did not

16

erroneously tell Mother or the juvenile court that Mother was participating in all the services she had been ordered to complete. Mother was not misled by CFS to believe she was complying with her case plan when she failed to complete her substance abuse component. Unlike the mother in *Amanda H.*, who immediately enrolled in domestic violence counseling once learning of the department's misrepresentation, Mother simply chose to stop participating in services. In sum, it was Mother's actions, not CFS's, that led to her non-compliance—which is no basis for reversal.

Mother also complains that individual counseling or her compliance with her medication was not mentioned in CFS's 12-month review report and there was no indication CFS had provided out-of-county drug testing sites to her until July 2023. Mother forfeited any claims of inadequacies in the reports when she failed to raise the issue to the court below. Failure to object to the adequacy of the department's report waives the argument for appeal. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412.) "'[A]ny other rule would permit a party to . . . deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. [Citation.]'" (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) Furthermore, at the contested 12-month review hearing on August 2, 2023, Mother's counsel conceded "CFS is not responsible for referring Mom to testing facilities in L.A. County." And, Mother did not complain as to CFS's failure to provide her with drug testing sites in Los Angeles County sooner than July 2023.

17

"In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect." (*Misako R.*, *supra*, 2 Cal.App.4th at p. 547.) The question is whether the services were reasonable under the circumstances. The answer is yes. CFS made referrals for Mother to participate in domestic violence education, parenting education, individual counseling, substance abuse treatment, and drug testing at the outset of the dependency, but Mother failed to accept the referrals or to consistently attend the services provided to her, namely substance abuse treatment. A social services agency cannot force a parent to participate in services. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233; *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365 ["'an unwilling or indifferent parent cannot be forced to comply'" with reunification services].)

CFS made numerous efforts to provide Mother with services that were designed to remedy the problems leading to the dependency. Having carefully reviewed the entire record, we find that substantial evidence supports the juvenile court's finding that Mother was provided with reasonable reunification services. (See *Misako R.*, *supra*, 2 Cal.App.4th at p. 545.)

IV.

DISPOSITION

Mother's petition for extraordinary relief is denied on the merits.  (Cal. Rules of

Court, rule 8.452(h).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

I concur:


RAMIREZ

P. J.

[*L.T. v. The Superior Court; CFS*, E081916]

MENETREZ, J., Concurring.

I concur in the judgment.

The only issue raised by mother is that the juvenile court erred by finding that San Bernardino Children and Family Services (CFS) provided reasonable services during the 12-month review period. "We review the reasonable services finding for substantial evidence." (*In re T.W.-1* (2017) 9 Cal.App.5th 339, 346.) The reasonableness of CFS's efforts must be evaluated in light of all the circumstances of the case. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) Thus, the issues are (1) what CFS did during the relevant time period and (2) whether it was reasonable under the circumstances.

The record contains evidence that CFS provided the following services to mother: (1) On some unspecified date before the six-month review hearing, CFS provided mother with referrals for her case plan programs; (2) CFS conducted a child and family team meeting (CFT) on January 13, 2023 (i.e., before the six-month review hearing); (3) CFS conducted additional CFT's on March 21 and July 7, 2023; and (4) at the July 7 CFT, the social worker provided mother with a list of drug testing sites "throughout California." The 12-month review report also asserts that mother "has not made herself available to" the social worker, but the report does not say what efforts, if any, the social worker made to contact the mother. As best I can determine, the record contains no evidence of any other services provided by CFS.

Thus, the only services shown by the evidence to have taken place between the six-month review hearing and the 12-month review hearing are two CFT's and the

1

provision of a statewide list of drug testing sites. It is hard to see how those could possibly constitute reasonable services, particularly given that the standard of proof is clear and convincing evidence. (Welf. & Inst. Code, § 366.21, subd. (f)(1)(A); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

CFS argues that mother forfeited her substantial evidence challenge by failing to argue against the reasonable services finding in the trial court. The argument is meritless because substantial evidence challenges are not forfeited by failure to raise the issue in the trial court. (*In re R.V.* (2012) 208 Cal.App.4th 837, 848; *In re Javier G.* (2006) 137 Cal.App.4th 453, 464; see generally *People v. Butler* (2003) 31 Cal.4th 1119, 1126.)[1]

The thrust of CFS's argument in the remainder of its brief appears to be that because mother's cooperation and case plan compliance were poor, it was permissible for CFS to do almost nothing. Insofar as that is CFS's position, it is legally erroneous. A parent's failings do not relieve CFS of its statutory obligation to make efforts that are reasonable under the circumstances. (*In re Taylor J.*, *supra*, 223 Cal.App.4th at p. 1451.) If a parent is difficult to contact or does not respond to the social worker's communications, then it might well be true that the social worker can do no more than continue to try to reach out to the parent. But the social worker must make those efforts. The record before us contains no evidence of such efforts.

---

**1** *In re Kevin S.* (1996) 41 Cal.App.4th 882, which is cited in the majority opinion (maj. opn., *ante*, at p. 11), is not to the contrary. In that case, the argument raised on appeal was that the juvenile court committed legal error by terminating reunification services at the combined 12-month and 18-month review hearing despite finding that reasonable services had not been provided. (*In re Kevin S.*, *supra*, at pp. 885-886.)

2

The record does, however, contain an alternative basis for denial of mother's petition.  At the 12-month review hearing, mother's counsel acknowledged having been provided with CFS's "delivered service logs."  No party asked that the logs be admitted into evidence, so they were not before the trial court and are not part of the record on appeal.  But mother's counsel, having reviewed those logs, made the following express concession:  "Mom has not been super reachable.  CFS did try to reach out to Mom and she did not return social worker's communication.  That is on my client."  Given that mother's counsel received the delivered service logs and, apparently on that basis, expressly conceded that CFS did try to communicate with mother and that any lack of communication was the fault of mother rather than CFS, mother cannot now argue that CFS's efforts to communicate with her were insufficient.  (*In re Cody W.* (1994) 31 Cal.App.4th 221, 231.)  Mother's petition should accordingly be denied, and I therefore concur in the judgment.

MENETREZ_____
                                                                                    J.

3