Filed 9/23/24  In re Z.T. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re Z.T., a Person Coming Under the Juvenile Court Law. | C100038 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2021-0000307) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION |
| v. | |
| C.T., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed in this case on August 29, 2024, be modified as follows:

1. On page 10, in the citation immediately following the second sentence of the first full paragraph, "*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430" is

deleted and "§ 224.2, subd. (i)(2); *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961" is inserted in its place so the citation reads:

(§ 224.2, subd. (i)(2); *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961; *Dezi C.*, *supra*, ___ Cal.5th at p. ___ [p. 16].)

2. On page 10, in the citation immediately following the third sentence of the first full paragraph, "*Ibid.*" is changed to "*Dezi C.*, at p. ____" so the citation reads:

(*Dezi C.*, at p. ____ [p. 27].)

There is no change in the judgment.

BY THE COURT:


/s/_____
ROBIE, Acting P. J.


/s/_____
MAURO, J


/s/_____
DUARTE, J.

2

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re Z.T., a Person Coming Under the Juvenile Court Law. | C100038 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2021-0000307) |

Appellant C.T., biological father of the minor, appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  He contends the juvenile court erred by failing to properly

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

consider the application of the beneficial parental relationship exception to adoption and by failing to comply with the inquiry and notice provisions of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1900 et seq.) We conditionally reverse for further ICWA compliance.

FACTUAL AND PROCEDURAL BACKGROUND

The minor in this case was detained shortly after her August 2021 birth, after mother tested positive for cocaine and opioids at the time of delivery. The minor was experiencing withdrawal symptoms. Mother initially identified D.C. as the minor's father, although he had not been present at birth or signed a declaration of paternity. San Joaquin County Human Services Agency (Agency) filed a section 300, subdivision (b) petition on behalf of the minor based on mother's and D.C.'s substance abuse and criminal histories, and their lack of appropriate provisions for the minor. Neither mother nor D.C. appeared at the detention hearing and D.C. was declared to be an alleged father. Paternity testing for D.C. was ordered.

The juvenile court sustained the petition in September 2021. The Agency subsequently reported that the paternity test results showed D.C. is not the minor's biological father. Mother was not present at the November 16, 2021 disposition hearing. The juvenile court adjudged the minor a dependent child of the court and ordered her removed from parental custody. D.C. was dismissed from the proceedings and mother was provided with reunification services.

In mid-January 2022, appellant C.T. (father) contacted the Agency and indicated mother had informed him that D.C. was not the minor's father. On February 17, 2022, father made his first appearance and requested genetic testing. The juvenile court granted his request for paternity testing. The caretaker, with whom the minor had been placed since detention, was declared a de facto parent on February 23, 2022.

In May 2022, the Agency filed its six-month review report. The Agency recommended termination of mother's reunification services, as she had not complied

with the case plan. Father's paternity test results had revealed him to be the minor's biological father and he was appointed counsel. He was referred to therapy and parenting classes. The Agency did not recommend placement with him, however, due to his criminal history, including a conviction for a violent felony. The Agency began weekly visits but suspended them pending a juvenile court visitation order. Two visits had taken place. At the first visit, the minor was crying so hard the visit had to be ended early.

Father was present on June 16, 2022, when the matter was set for an August 31, 2022 contested hearing. His counsel informed the juvenile court that father wished to establish a relationship with the minor and was requesting visitation. The juvenile court ordered weekly monitored visitation for father.

Father did well at the supervised visits by interacting with and attempting to console the minor, but initially, the minor was not put at ease. The minor continued to cry throughout the initial visits, although visits had improved since the first visit at which the minor cried for 45 minutes nonstop. The social worker reported that the minor still appeared uneasy during the visits with father. Father had already completed parenting classes and four sessions of individual counseling, but the Agency recommended he be bypassed for reunification services. The Agency did not believe reunification services would benefit the minor and noted that, had father been declared a presumed father, it would be recommending bypass due to his violent felony conviction. (§ 361.5, subd. (b)(12).) The juvenile court ordered reunification services, including drug court, for father at the August 31, 2022 hearing. Mother's reunification services were terminated.

Father was admitted to an intensive outpatient treatment program in October 2022. On November 17, 2022, the juvenile court ordered father have unsupervised visits, including visits in the community and extended visits. By January 2023, it was reported father was having three-hour community visits twice weekly. No problems were noted. The Agency's February 2023 report, however, noted father had multiple positive drug tests indicating cocaine use, although father denied using cocaine. A sober living facility

was recommended but father did not follow through with the recommendation.  In April 2023, the Agency reported that, after a period of testing clean, father was terminated from the intensive outpatient treatment program and drug court due to multiple positive tests for cocaine.  Father's visitation was returned to supervised and, on May 2, 2023, his reunification services were terminated.

The section 366.26 selection and implementation hearing took place on November 27, 2023.  The Agency recommended termination of parental rights.  Father testified at the hearing about the quality of his visits with the minor, reporting the minor enjoyed playing at the visits and sometimes was sad when she left.  After argument relating to the application of the beneficial parental relationship exception to adoption, the juvenile court found the exception inapplicable and terminated parental rights.

Father appeals.  Additional facts are included in our discussion of the issues.

## DISCUSSION

### I

### *Beneficial Parental Relationship Exception To Adoption*

Father claims the juvenile court erred in finding the beneficial parental relationship exception did not apply because it failed to engage in the analysis required by *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*).  We find no error.

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.*  [Citation.]' [Citations.]  If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child."  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)  There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B).)  Such circumstances include when the parents have maintained regular visitation and contact with the child,

the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *Caden C.*, *supra*, 11 Cal.5th at p. 629.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*Caden C.*, *supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) For the beneficial parental relationship exception to apply, "[t]he parent must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, at p. 636.) The factual predicates of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Id*. at pp. 639-640.)

As a preliminary matter, we note that, although not raised by either party, it is not clear that father, as a *mere biological father*, can raise the beneficial parental relationship exception to adoption. "This court has consistently held that a biological father's rights are limited to establishing his right to presumed father status, and the court does not err by terminating a biological father's parental rights when he has had the opportunity to show presumed father status and has not done so." (*In re A.S.* (2009) 180 Cal.App.4th 351, 362; see also *In re Jason J.* (2009) 175 Cal.App.4th 922, 933-934 [" 'the mere biological father . . . may be terminated based solely upon the child's best interest and without any requirement for a finding of detriment or unfitness' "].) However, because neither party addressed this issue, we will address the merits of father's contention of error.

5

Father complains the juvenile court failed to state, on the record, its reasons and findings in denying application of the beneficial parental relationship exception. He argues that the failure to state its reasons on the record establishes the court did not *consider* the application of the exception as required by *Caden C.* We reject this supposition. The juvenile court is not required to make those findings on the record and its failure to do so does not establish it did not engage in the analysis required by *Caden C.* (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156, 1161 [no requirement that juvenile court make specific findings when it finds beneficial parental relationship exception does not apply].) The parties fully argued their positions on the application of the exception citing the *Caden C.* elements. The Agency acknowledged that father had been visiting regularly but argued the minor would not benefit from continuing the relationship and the relationship did not promote the well-being of the minor to such a degree as to outweigh the benefits of a permanent home. The Agency went on to argue that father had not shown a significant bond and that the minor would be greatly harmed if the relationship were severed. Minor's counsel emphasized that minor had not even met father until she was eight months old and the minor cried at most visits when she first saw father. Minor's counsel argued that there was no detriment to the minor in terminating parental rights. Father's counsel argued father had tried his best to complete his services and form a relationship with the minor. Counsel argued that, although father had relapsed and had his services terminated, he had consistently visited. So, the question was whether the minor would "benefit from the continued relationship versus adoption" and argued that, while the minor is very young, father believed she would benefit and he hoped he would be able to assume custody someday. The Agency responded that father's compliance with the case plan was not at issue at this stage in the proceedings. The juvenile court then declined to apply the exception and terminated parental rights.

We will not presume, based on the juvenile court's decision not to provide a statement of reasons or findings, that it ignored the arguments presented, as well as the law on the subject and, as argued by appellant, "completely overlooked its responsibility to determine whether [the minor] would benefit from continuing the relationship with [f]ather," "unequivocally chose not to engage in" the *Caden C.* analysis or " 'sift through' " the facts, and did not consider the impact to the minor's well-being of terminating the parental relationship. The presumption is that the juvenile court knew and properly applied the law. (Evid. Code, § 664; *People v. Woods* (1993) 12 Cal.App.4th 1139, 1152.) "It is an appellant's burden to overcome the regularity presumption by an affirmative showing." (*Woods*, at p. 1152; see also *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 ["scores of appellate decisions, relying on this provision [Evid. Code, § 664], have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law' "]; *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653-654 [" '[w]e must presume that the court knew and applied the correct statutory and case law' and applied them to the facts in this case"].) Father has failed to carry his burden of overcoming the presumption that the juvenile court properly considered the application of the beneficial parental relationship exception to adoption.

Father also complains at length that the Agency's reports did not provide what he believes to be sufficient information regarding the nature and quality of the minor's relationship with him. Although father's argument is not clear, he appears to concede that the relevant information was contained in the logs and exhibits to the Agency's reports, but complains that information was not sufficiently summarized or analyzed in the body of the reports. The lack of clarity surrounding his argument is exacerbated by his failure to raise it in a distinct argument "under a separate heading or subheading summarizing the point," as required under California Rules of Court, rule 8.204(a)(1)(B). Had he done so, it may have clarified his contention. Because he failed to do so, however, we find he

forfeited this argument. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

Additionally, father never called into question the adequacy of the Agency's reports, nor did he object to the juvenile court's reliance on those reports. As such, he has, again, forfeited any such claim on appeal in that regard. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [failure to object to adequacy of adoption assessment]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412 [failure to object to inadequacy of adoption assessment]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to object to lack of preliminary assessment of prospective guardian]; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339 [failure to object to lack of bonding study].)

Finally, we note that father fails to explain how he was prejudiced by the lack of analysis in the reports, since he appears to concede that the relevant information and materials were attached to the reports, the juvenile court was able to review and consider those materials he claims support his position, and he had the opportunity to explore the topic at the contested hearing. While the Agency is tasked with including in its report, inter alia, a review of the amount of and nature of any contact between the child and his or her parents since the time of placement,[2] it was father's burden to establish the beneficial parental relationship exception to adoption. (§ 366.22, subd. (c)(1)(B).) He failed to meet that burden.

---

[2] The Agency is also to include in the report: "The relationship of the child to any identified prospective adoptive parent or legal guardian, the duration and character of the relationship, the degree of attachment of the child to the prospective relative guardian or adoptive parent, the relative's or adoptive parent's strong commitment to caring permanently for the child, the motivation for seeking adoption or legal guardianship, a statement from the child concerning placement and the adoption or legal guardianship, and whether the child, if over 12 years of age, has been consulted about the proposed relative guardianship arrangements, unless the child's age or physical, emotional, or other condition precludes their meaningful response, and if so, a description of the condition." (§ 366.22, subd. (c)(1)(E).)

## II

### *The ICWA*

Father also contends the Agency erred in failing to comply with the ICWA's affirmative and continuing duty of inquiry by failing to further inquire into possible Choctaw ancestry identified by the paternal aunt, and the juvenile court erred in failing to make a finding on the adequacy of the Agency's ICWA compliance and on the applicability of the ICWA. The Agency agrees that it did not fully and properly inquire of the minor's family and agrees that remand for ICWA compliance is necessary.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under [the] ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquiry whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (Aug. 19, 2024, S275578) ___ Cal.5th ___ [p. 1] (*Dezi C.*); see § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

Section 224.2 creates three distinct duties regarding the ICWA in dependency proceedings. The first is relevant here. "First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who

9

have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

Due to changes in California law, agencies now have broader duties of inquiry and documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when an agency fails to discharge those duties. We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; *Dezi C.*, *supra*, ___ Cal.5th at p. ___ [p. 16].) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Ibid*. [p. 27].) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (Aug. 19, 2024, S276649) ___ Cal.5th ___ [p. 13].) The California Supreme Court has recently held that "an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.*, at p. ___ [p. 20].)

Here, the Agency concedes that it failed to fulfill its duty to inquire and thus provided an inadequate record, and that a more complete inquiry should have been undertaken. Although both parents, the maternal grandmother, and the maternal aunt denied Native American ancestry, father's paternal aunt reported that she had Choctaw ancestry—and that the minor's paternal grandfather was her brother. The Agency provided the paternal aunt with a parental notification of Indian status form (ICWA-020) but it does not appear the Agency ever received the completed form, made further contact

10

with the paternal aunt, or otherwise made further ICWA inquiry in connection with the claim of possible Choctaw ancestry. In addition to conceding its own error, the Agency concedes the juvenile court erred in failing to make a finding on the applicability of the ICWA.

We agree that remand is necessary. The juvenile court was required to make findings as to the applicability of the ICWA and its failure to do so here was error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Because the juvenile court did not make the requisite findings and orders that ICWA inquiry and notice were sufficient and that the ICWA does not apply, we have no ICWA findings and orders to review and any remarks we would make on the adequacy of the Agency's inquiry, despite the Agency's concession it was lacking, would be advisory. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].) Accordingly, we conditionally reverse and remand the case to the juvenile court for further proceedings. The Agency is to "make additional inquiry and documentation efforts consistent with its duties and the [juvenile] court shall hold a hearing thereafter to determine whether, in light of the outcome of the inquiry as documented, [the] ICWA applies. If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that . . . [the] ICWA does not apply, any inquiry error is cured, and the judgment [shall] be reinstated. [Citation.] In contrast, if the inquiry reveals a reason to know the [minor] is an Indian child, the tribe has been notified [citations], and the tribe determines the child is a member or citizen, or eligible for membership or citizenship, of an Indian tribe [citations], [the] ICWA applies" and the juvenile court must proceed in accordance with the ICWA. (*Dezi C.*, *supra*, ___ Cal.5th at p. ___ [p. 22].)

# DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of the ICWA, as well as the requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5).  If the juvenile court thereafter finds a further inquiry was proper and adequate, due diligence has been conducted, and the ICWA does not apply, the orders shall be reinstated.  If, however, the juvenile court finds the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions, including considering any petition filed to invalidate prior orders.  (§ 224, subd. (e).)


 /s/
ROBIE, Acting P. J.



We concur:



 /s/
MAURO, J.



 /s/                              ,
DUARTE J.


12